IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


TRANSOCEAN OFFSHORE                §
DEEPWATER DRILLING, INC.,          §
                                   §
            Plaintiff,             §
                                   §
v.                                 §        CIVIL ACTION NO. H-03-2910
                                   §
GLOBALSANTAFE CORP.,               §
GLOBAL MARINE, INC.,               §
GLOBAL SANTA FE DRILLING CO.,      §
GLOBAL MARINE DRILLING CO.,        §
                                   §
            Defendants.            §


**<u>MEMORANDUM AND OPINION</u>**


        Plaintiff, Transocean Offshore Deepwater Drilling, Inc.,

(Transocean) brings this action against defendants, GlobalSantaFe

Corp., Global Marine, Inc., Global Santa Fe Drilling Co., and

Global Marine Drilling Co. (collectively, "GSF"), for infringement

of patents to which it is the exclusive licensee.  Transocean

claims that GSF is liable for direct infringement of U.S. Patent

No. 6,047,781 ('781 Patent), U.S. Patent No. 6,056,071 ('071

Patent), U.S. Patent No. 6,068,069 ('069 Patent), and for U.S.

Patent No. 6,085,851 ('851 Patent; collectively, "the patents-in-

suit").  GSF asserts counterclaims for declaratory judgment of

noninfringement and/or patent invalidity for each of the four

patents-in-suit.  Pending before the court is Transocean's Motion

for Partial Summary Judgment (Docket Entry No. 71).  For the

reasons explained below, Transocean's motion will be granted in part and denied in part.

## I.  Facts and Procedural Background

Transocean is the assignee of the four patents-in-suit, each of which was issued for the invention of a Multi-Activity Offshore Exploration and/or Development Drilling Method and Apparatus.[1]  The present action centers around a bid that GSF submitted to British Petroleum Amoco (BP) in June of 2003 for a deep water oil field development project in the Gulf of Mexico known as the Atlantis Project, and a two-year exploration and development contract awarded to GSF in October of 2004 by BHP Billiton Petroleum (Americas) Inc. (BHP).  Transocean alleges on information and belief that GSF's Atlantis Project bid to BP was for a dual activity structure, the Development Driller II (DD II), and a method for conducting dual activity operations,[2] and that a contract awarded to GSF in October of 2004 by BHP was for a dual activity structure, the Development Driller I (DD I), and a method for conducting dual activity operations.[3]  On April 5, 2005, the court entered a Memorandum Opinion that construed the meaning of several terms:

---

[1]See Plaintiff's Second Amended Complaint, Docket Entry Nos. 63 and 65, p. 2.

[2]Id. at p. 3, ¶¶ 15-17.  See also Original Complaint, Docket Entry No. 1, p. 3, ¶¶ 15-17.

[3]Id. at p. 3, ¶¶ 18-19.

the terms "single well," "a well," and "the well" to mean
"expressly limited to dual drilling stations conducting
operations on a single well or methods for conducting
simultaneous operations from dual drilling stations on a
single well;" the terms "transfer," "transferring,"
"transfer means" to mean "direct transfers, intermediate
transfers, and combinations thereof;" the term
"advancing" to mean "lowering and raising tubular
members," the term "advancing means" to mean "equipment
used to raise and lower pipe," and the term "tubular
advancing station" to mean "a location on a drilling
floor or drilling deck where tubular members are advanced
to or into the seabed;" the terms "operations auxiliary
to drilling operations" and "auxiliary drilling activity"
to have the same meaning, i.e., "operations related to
drilling a well and progressing that well toward
production but not directly involved in physically
advancing or expanding the wellbore;" the terms
"simultaneous" and "simultaneously" to mean overlapping
in time; and the term "one of ordinary skill in the art"
to be one who "has a bachelor's degree in a pertinent
engineering discipline, such as petroleum engineering or
mechanical engineering, and ten years' experience in
petroleum drilling, at least half of which is offshore
experience."[4]

## II.  <u>Standard of Review</u>

"Summary judgment is appropriate when there are no genuine

issues of material fact and the moving party is entitled to

judgment as a matter of law." <u>Syntex (U.S.A.) LLC v. Apotex, Inc.</u>,

407 F.3d 1371, 1377 (Fed. Cir. 2005) (citing Fed. R. Civ. P. 56(c);

<u>Anderson v. Liberty Lobby, Inc.</u>, 106 S.Ct. 2505, 2509-2510 (1986)).

"A genuine dispute is shown to exist if sufficient evidence is

presented such that a reasonable fact finder could decide the

_____

[4]Memorandum Opinion, Docket Entry No. 69, p. 24 (citations
excluded).

question in favor of the non-moving party." <u>Opryland USA Inc. v.</u>
<u>Great American Music Show, Inc.</u>, 970 F.2d 847, 850 (Fed. Cir.
1992).  "Summary judgment may properly be granted on questions of
fact when no reasonable jury could reach a contrary verdict, even
after drawing all reasonable factual inferences in favor of the
non-movant." <u>Hoffer v. Microsoft Corp.</u>, 405 F.3d 1326, 1328 (Fed.
Cir. 2005).  "While the non-moving party is not required to present
its entire case in response to a motion for summary judgment, to
defeat the motion the non-movant must present sufficient evidence
to show an evidentiary conflict as to the material fact in
dispute." <u>Opryland</u>, 970 F.2d at 850.

### III.  <u>Analysis</u>

Transocean seeks summary judgment of infringement of apparatus
claims 10-12 of the '781 patent, claims 9, 14-16, and 27-29 of the
'071 patent, and claim 17 of the '069 patent,[5] and method claims 20
and 21 of the '781 Patent.[6]

### A.  Applicable Law

A patent claim is infringed by "whoever without authority
makes, uses, offers to sell, or sells any patented invention,
within the United States or imports into the United States any

---

[5]See Transocean's Motion for Partial Summary Judgment,
Docket Entry No. 71, p. 8.

[6]<u>See</u> <u>id.</u> at p. 9.

patented invention during the term of the patent therefor." 35
U.S.C. § 271(a). Proof of infringement involves a two-step
process: "(1) the court must first interpret the claim, and (2) it
must then compare the properly construed claims to the allegedly
infringing device." Syntex, 107 F.3d at 1377. Construing the
claims is a question of law already completed by this court. Id.
See also Markman v. Westview Instruments, Inc., 517 U.S. 370, 372
(1996). Comparing the construed claims to the accused apparatus
and/or method is generally a question of fact. Id. (citing Bai v.
L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998)). "To
establish infringement, every limitation set forth in a patent
claim must be found in an accused product [i.e., apparatus] or
process [i.e., method] exactly or by a substantial equivalent."
Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1535 (Fed. Cir.
1991). The patentee bears the burden of proving infringement by a
preponderance of the evidence. Id. A literal infringement issue
is properly decided upon summary judgment when no reasonable jury
could find that every limitation recited in the properly construed
claim is or is not found in the accused device. See Bai, 160 F.3d
at 1353-1354 (citing Cole v. Kimberly-Clark Corp., 102 F.3d 524,
532 (Fed. Cir. 1996) (defining literal infringement standard). An
equivalent infringement issue is properly decided for the patentee
upon summary judgment when the accused device contains elements
that are equivalent to each of the properly construed claim
limitations. See Bai, 160 F.3d at 1353-1354 (citing Warner-

-5-

<u>Jenkinson v. Hilton Davis Chem. Co.</u>, 117 S.Ct. 1040, 1049 (1997)

(defining equivalent infringement standard)).

**B.   Apparatus Claims**

Transocean argues that GSF's own documents establish that its

development driller rigs infringe apparatus claims 10-12 of the

'781 patent, claims 9, 14-16, and 27-29 of the '071 patent, and

claim 17 of the '069 patent.[7]   Transocean asserts that each claim

contains some variation of the following elements:

> A multi-activity drilling assembly on an offshore rig for
> drilling operations on a single well that includes the
> following:
>
>> a derrick or other superstructure on a
>> drilling deck to support drilling operations
>> and auxiliary drilling operations;
>>
>> a first means for advancing tubular members
>> into the seabed (e.g., with drawworks, cable,
>> crown block, traveling block, elevator, rotary
>> table, and/or other equipment used to raise
>> and lower tubular members); and
>>
>> a second means for advancing tubular members
>> to the seabed simultaneous with the first
>> means for advancing to enable drilling
>> activity from one advancing station while
>> conducting auxiliary drilling operations from
>> the other advancing station.[8]

Transocean asserts that claims 10-12 of the '781 patent and

claim 17 of the '069 patent add a variation to the above invention

by adding the following element:

---

[7]<u>See</u> <u>id.</u> at p. 8.

[8]<u>Id.</u>

a means for transferring tubular members between the
first and second means for advancing tubular members
(e.g., two tubular handling assemblies mounted on a rail
extending between the advancing stations) to facilitate
simultaneous drilling operations and auxiliary drilling
operations.[9]

Transocean asserts that claim 12 of the '781 and claims 15-16 and 28-29 of the '071 patent add to the above invention by adding the following element: "two separate setback envelopes, one next to each of the means for advancing,"[10] and that claims 16 and 29 of the '071 patent add to the above invention two top drives.[11]

1.   <u>Transocean's Assertions of Infringement</u>

Transocean argues that GSF's offer to lease the DD II to BP constitutes an "offer to sell" that infringes the apparatus claims for which summary judgment is sought, that GSF's execution of a lease agreement with BP for the DD II constitutes a "sale" that infringes those claims, and that GSF's transfer of the DD II from Singapore to the Gulf of Mexico constitutes an "importation" that also infringes those apparatus claims.[12]

(a)   Offer to Sell

Citing <u>3-D Systems, Inc. v. Aerotech Labs, Inc.</u>, 160 F.3d 1374, 1379 (Fed. Cir. 1998), Transocean argues that "[a]n offer to

_____

[9]<u>Id.</u>

[10]<u>Id.</u> at p. 9.

[11]<u>Id.</u>

[12]<u>Id.</u> at pp. 12-14.

sell is any communication that includes a description of the product and a price at which it can be purchased."[13]  As evidence that GSF offered to sell the infringing apparatus, i.e., the DD II, to BP, Transocean submits excerpts from GSF's Atlantis Project bid, which includes a description of the accused DD II and a price at which it could be acquired, i.e., $187,000 per day and an initial mobilization fee of $2.3 million.[14]  Citing <u>In re Kollar</u>, 286 F.3d 1326, 1331 n.3 (Fed. Cir. 2002), Transocean argues that an offer to lease the DD II constitutes an offer to sell the rig since "a commercial transaction arranged as a 'license' or a 'lease' of a product or device . . . may be tantamount to a sale . . . because 'the product is . . . just as immediately transferred to the 'buyer' as if it were sold."  <u>Id.</u> (quoting <u>Group One, Ltd. v. Hallmark Cards, Inc.</u>, 254 F.3d 1041, 1049 & n.2 (Fed. Cir. 2001)).  Transocean argues that GSF's offer to lease the DD II to BP is an offer to sell that constitutes an act of infringement.[15]

     (b)  Sale

     Citing the contract by which GSF gave BP the exclusive rights to drill with the DD II for three years in the Atlantis field in the Gulf of Mexico in exchange for an initial mobilization fee of

---

[13]<u>Id.</u> at p. 13.

[14]<u>Id.</u>

[15]<u>Id.</u>

$2.3 million and a day rate of $182,000,[16] and the contract by which GSF leased the DD I to BHP for drilling in the Neptune field in the Gulf of Mexico in exchange for an initial mobilization fee of $4 million and a day rate of $210,000,[17] Transocean argues that GSF infringed the asserted apparatus claims by selling the development driller rigs.[18]     Citing <u>In re Keller</u>, 286 F.3d at 1331, Transocean argues that these contracts are commercial transactions that constitute sales for purposes of infringement under 35 U.S.C. § 217(a).[19]

        (c)  Import

    Citing GSF's Atlantis Project bid for its statement that the development driller rigs were built in Singapore,[20] and GSF's internet web site for its statement that the DD II has been transferred to the Gulf of Mexico,[21] Transocean argues that GSF imported an infringing apparatus into the United States.

-------

[16]See Transocean Exhibit 4, pp. 38-39.

[17]See Transocean Exhibit 5, Schedule F.

[18]Transocean's Motion for Partial Summary Judgment, Docket Entry No. 71, p. 14.

[19]See Transocean's Motion for Partial Summary Judgment, Docket Entry No. 71, pp. 13-14.

[20]See Transocean Exhibit 7 at Section A.

[21]See Transocean Exhibit 8 (Fleet Specifications).

2.    <u>GSF's Arguments in Response</u>

GSF does not dispute Transocean's arguments that its offer to lease the DD II to BP constitutes an "offer to sell" for purposes of 35 U.S.C. § 271(a), that GSF's execution of a lease agreement with BP for the DD II constitutes a "sale" for purposes of 35 U.S.C. § 271(a), or that GSF's transfer of the DD II from Singapore to the Gulf of Mexico constitutes an "importation" for purposes of 35 U.S.C. § 271(a).  GSF argues, instead, that none of these acts constitute an infringement because the development driller rigs are not covered by Transocean's apparatus claims, and that the asserted claims of the '781 and '069 patents are not infringed because the transferring of tubulars between drill centers on the development driller rigs will not "[f]acilitate [s]imultaneous [d]rilling [o]peration and [a]uxiliary [d]rilling [o]perations."[22]

3.    <u>Analysis</u>

(a)  Are the Development Driller Rigs Covered by Transocean's Apparatus Claims?

Without disputing Transocean's assertion that the development driller rigs contain each of the structural elements described in the asserted apparatus claims, GSF argues that the development driller rigs are not covered by those claims because the court has already held "that rigs 'capable of operating on one or more wells'

---

[22]GSF's Opposition to Transocean's Motion for Partial Summary Judgment, Docket Entry No. 75, p. 13.

-10-

are not covered by Transocean's claims."[23]  GSF argues that this
holding in the court's claim construction opinion precludes
Transocean from showing that it offered for sale, sold, or imported
an infringing apparatus because its developer driller rigs are
<u>capable</u> of working on one well.[24]   GSF argues that "[t]he [c]ourt
made it clear that Transocean's apparatus claims are[] expressly
limited to dual drilling stations <u>conducting operations</u> on a single
[i.e., one] well."[25]

Asserting that the question of whether an apparatus that is
merely "capable" of conducting simultaneous operations on one well
infringes its apparatus claims, or whether an apparatus must first
conduct simultaneous operations on one well before liability
begins, are questions of claim construction that the court did not
squarely address in its previous opinion, Transocean argues that
the court nevertheless resolved the issue when it concluded that
the terms "single well," "a well," and "the well" used in its
apparatus claims mean that the apparatus described in each of those
claims is a "'multi-activity drilling assembly' capable of

---

[23]<u>Id.</u> at p. 11 (citing Memorandum Opinion, Docket Entry
No. 69, p. 10).

[24]<u>Id.</u> at p. 12 ("GSF acknowledges that DDI and DDII are,
like the prior art, capable of conducting drilling activity and
auxiliary activity on one well.").

[25]<u>Id.</u> (citing Memorandum Opinion, Docket Entry No. 69, p. 24
(emphasis in original)).

conducting simultaneous operations on a single [i.e., one] well."[26]
For the reasons explained below the court agrees.

Both parties agree that the prior art includes rigs that are
capable of conducting operations on more than one well,[27] and both
parties rely on the court's claim construction analysis to support
their respective arguments regarding the development driller rigs'
infringement of Transocean's apparatus claims.  The portions of the
court's claim construction analysis on which both parties rely
addressed the following question:  Whether the terms "single well,"
"a well," and "the well" used in the asserted apparatus claims mean
"one well" as argued by GSF or "one or more wells" as argued by
Transocean.[28]   For the reasons stated in its claim construction
opinion (Docket Entry No. 69), the court rejected Transocean's
proposed construction of these terms (i.e., "one or more wells") in
favor of GSF's proposed construction ("one well").

Although the court may not have stated its conclusions as
articulately as possible, the court concluded that use of the terms
"single well," "a well," and "the well," in claims 14-16 and 27-29

---

[26]Transocean's Motion for Partial Summary Judgment, Docket
Entry No. 71, p. 1.

[27]See GSF's Claim Construction Brief, Docket Entry No. 52,
p. 11 & n.6 (citing transcript of September 24, 2004, Hearing
[Docket Entry No. 42] at p. 13 where "Transocean admitted that
drilling two wells simultaneously is 'part of the prior art' and
'not the invention'").

[28]See Memorandum Opinion, Docket Entry No. 69 at pp. 9-11.

of the '071 Patent, means that the apparatus described in each of
those claims is a multi-activity drilling assembly that must be
able to conduct simultaneous operations on one well.  Observing
that the rest of the asserted apparatus claims do not contain the
term "single well," but that they all describe primary drilling
operations to be performed on "a well," and auxiliary drilling
operations to be performed on "the well," the court also concluded
that the apparatus to be used for primary operations and the
apparatus to be used for auxiliary operations had to be capable of
conducting simultaneous operations on the same well.[29]

The court rejected Transocean's proposed construction of the
terms "single well," "a well," and "the well," to mean "one or more
wells" in favor of GSF's proposed construction of "one well"
because use of the word "or" in Transocean's proposed construction
vitiates Transocean's own admission that the apparatus described in
its claims must be able to conduct simultaneous operations on one
well.[30]  Use of the word "or" in Transocean's proposed construction

---

[29]Id. at pp. 10-11.

[30]See Transocean's Response to GSF's Claim Construction
Brief, Docket Entry No. 62, pp. 2-3 ("the claimed drilling rigs
must be able to work on one well. . . Transocean agrees that the
method claims are directed to operations on one well").  See also
Transcript of Hearing Held September 24, 2004 (Docket Entry
No. 42), p. 13, where the court asked Transocean's counsel if
Transocean was able to drill two wells simultaneously, and
counsel responded "[t]hat's part of the prior art as we see it,
Your Honor.  We could do that, but that's not the invention."

vitiates this admission because "one or more wells" means that the apparatus covered by the claims is an apparatus that is able to conduct simultaneous operations on either one well or on more than one well.  The court rejected this proposed construction because an apparatus that is able to conduct simultaneous operations on more than one well is not necessarily an apparatus that is able to conduct simultaneous operations on one well.

The court's conclusion that Transocean's claims describe an apparatus that must be able to conduct simultaneous operations on one well does not mean that Transocean's claims are limited to apparatuses that are actually conducting simultaneous operations on one well.  If, as GSF argues, the court had drawn this conclusion, the court would have impermissibly concluded that Transocean's apparatus claims could only be infringed by <u>use</u> of an infringing apparatus and not by an <u>offer to sell</u> the use of an infringing apparatus as alleged in Transocean's Second Amended Complaint.[31] <u>See</u> 35 U.S.C. § 271(a) ("whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent").

_____

[31]See Second Amended Complaint, Docket Entry Nos. 63 and 65, p. 3 ¶ 21 ("On information and belief, Defendants infringed the claims in the Patents-in-Suit by offering for sale the use of a dual activity structure and a dual activity method . . .").

Since the parties agree that the prior art includes rigs that are able to conduct simultaneous operations on more than one well, and that Transocean's invention is an apparatus that is able to conduct simultaneous operations on one well, the court concludes that Transocean's apparatus claims cover multi-activity drilling assemblies that are capable of conducting simultaneous operations on one well.  Since GSF does not dispute Transocean's assertions that the development driller rigs contain each of the structural elements described in the apparatus claims for which Transocean seeks summary judgment, and GSF admits that the development driller rigs are capable of conducting simultaneous operations on one well, the court concludes that the development driller rigs are covered by Transocean's apparatus claims.  See Hilgraeve Corp. v. Symantec Corp., 265 F.3d 1336, 1343 (Fed. Cir. 2001), cert. denied, 122 S.Ct. 1206 (2002) ("an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation").

> (b)  Do the Development Driller Rigs Infringe the Asserted Claims of the '781 and '069 Patents?

Claims 10-12 of the '781 Patent require a "means . . . for transferring tubular assemblies between a first top drive station and a second top drive station to facilitate simultaneous drilling operations and operations to the seabed auxiliary to said drilling

operations."[32]  Claim 17 of the '069 Patent requires "an assembly . . . operable to transfer tubular assemblies between said first tubular advancing station and said second tubular advancing station to facilitate simultaneous drilling operations auxiliary to said drilling operations."[33]  Transocean argues that the development driller rigs have a means/assembly for transferring tubular assemblies between two top drive/tubular advancing stations.[34]

Although GSF does not dispute Transocean's argument that the development driller rigs have a means for transferring tubular assemblies, GSF argues that Transocean is not entitled to summary judgment on its claim that the development driller rigs infringe the asserted claims of the '781 and '069 patents because "Transocean has not shown and cannot show that GSF's means for transferring pipe [i.e., tubular assemblies] between the two drill centers facilitates simultaneous drilling operations and auxiliary drilling operations."[35]  Citing the declaration of Peter Wilson, GSF argues that

> [w]hen the auxiliary drill centers on the DDI and DDII
> are not being used to run drill pipe, casing, or other

---

[32]'781 Patent, Col. 14, lines 55-60, Transocean Exhibit 1.

[33]'069 Patent, Col. 17, lines 31-36, Transocean Exhibit 3.

[34]Transocean's Motion for Partial Summary Judgment, Docket Entry No. 71, pp. 18-19.

[35]GSF's Opposition to Transocean's Motion for Partial Summary Judgment, Docket Entry No. 75, p. 13.

equipment to the sea bottom or to raise tubulars or other
equipment from a well back to the rig floor, the auxiliary
drill centers can build stands of three sections of drillpipe
or casing. . . . After being built, those stands are
transferred by pipehandling equipment to a setback area. When
the stands are needed by the main drill center, they are
transferred to the main drill center and added to the drill
pipe or casing string. . . This transfer through the setback
area from one advancing/top drive station to another
accelerates the speed at which strings of casing or drill pipe
can be moved to the sea bottom by the main drilling center.

Thus, to the extent that GSF's "means for
transferring" pipe between the two drill centers
facilitates anything, it facilitates the accelerated
movement of drill pipe or casing to the sea bottom from
the main drill center, just like the stand building
described in the prior art Lund Patent. . . . It does not
facilitate simultaneous drilling operations and auxiliary
drilling operations.[36]

Since GSF admits that the development driller rigs have a
means for transferring tubulars and presents evidence showing that
stands of pipe can be built by the auxiliary drill center,
transferred to the set back area, and from there to the main drill
center, and that these operations accelerate movement of the drill
pipe or casing to the sea bottom, but does not present evidence
showing either that these operations are not or cannot be conducted
simultaneously with operations at the main drill center, the court
is not persuaded that GSF has presented any evidence from which a
reasonable fact-finder could conclude that GSF's means for
transferring pipe between the two drill centers does not facilitate

---

[36]_Id._ at pp. 13-14.

-17-

simultaneous drilling operations and auxiliary drilling operations. The court is persuaded that GSF's evidence does not contradict but, instead, supports Transocean's assertion that "[t]hese transfers obviously 'facilitate' later operations, including simultaneous drilling operations and auxiliary operations, by preparing pipe stands for use in operations."[37]

### 4.   Conclusions as to Apparatus Claims

Since GSF admits that the development driller rigs are capable of conducting simultaneous operations on one well; since GSF does not dispute Transocean's arguments that the development driller rigs contain each of the structural elements described in apparatus claims 10-12 of the '781 patent, claims 9, 14-16, and 27-29 of the '071 patent, and claim 17 of the '069 patent; and since for the reasons explained above the court is not persuaded either that the development driller rigs are not covered by Transocean's apparatus claims because they are not actually conducting operations on one well, or that GSF has submitted any evidence from which a reasonable trier of fact could conclude that the development driller rigs' means for transferring pipe between the two drill centers does not facilitate simultaneous drilling operations and

---

[37]Transocean's Reply in Support of Its Motion for Partial Summary Judgment, Docket Entry No. 78, p. 7 (citing the '071 Patent, col. 7, lines 40-58 (Transocean Exhibit No. 2) as evidence that the patents describe stand building and storage as an example of the invention).

auxiliary drilling operations, the court concludes that Transocean is entitled to summary judgment on its claim that GSF infringes apparatus claims 10-12 of the '781 patent, claims 9, 14-16, and 27-29 of the '071 patent, and claim 17 of the '069 patent.

**C.   Method Claims**

Transocean argues that it is entitled to summary judgment on method claims 20 and 21 of the '781 patent because GSF's Atlantis Project bid establishes that GSF offered to sell an infringing method.[38]   GSF does not dispute that the method described in its bid, if performed, would infringe claims 20 and 21 of the '781 patent.   Instead, GSF argues that § 271(a)'s prohibition against "offers to sell" does not apply to method claims, and that even if it does, it offered to sell an apparatus, not a method.[39]   For the reasons explained below, the court concludes that Transocean has failed to establish that it is entitled to judgment as a matter of law on these two method claims.

> 1.   Does § 271(a)'s Prohibition Against "Offers to Sell" Apply to Method Claims?

(a)   Section 271(a)

Section 271(a) provides that "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers to

---

[38]See Transocean's Motion for Partial Summary Judgment, Docket Entry No. 71, pp. 12-13.

[39]See GSF's Opposition to Transocean's Motion for Partial Summary Judgment on Infringement, Docket Entry No. 75, pp. 14-16.

sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Section 271(i) provides that "[a]s used in this section, an 'offer for sale' or an 'offer to sell' by a person other than the patentee, or any designee of the patentee, is that in which the sale will occur before the expiration of the term of the patent." 35 U.S.C. § 271(i).

     (b)  Method Claims

A method or "process is a series of acts." <u>Minton v. National Association of Securities Dealers, Inc.</u>, 336 F.3d 1373, 1378 (Fed. Cir. 2003). "It is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized." <u>Roberts Dairy Co. v. United States</u>, 530 F.2d 1342, 1354 (Ct.Cl. 1976) (citing <u>Engelhard Industries, Inc. v. Research Instrumental Corp.</u>, 324 F.2d 347 (9th Cir. 1963), <u>cert. denied</u>, 84 S.Ct. 1220 (1964)). <u>See also</u> <u>NTP, Inc. v. Research in Motion, Ltd.</u>, 418 F.3d 1282, 1317 (Fed. Cir. 2005) (quoting <u>In re Kollar</u>, 286 F.3d 1326, 1332 (Fed. Cir. 2002) (distinguishing "between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process, which consists of a series of acts or steps"); <u>Joy Technologies, Inc. v. Flakt, Inc.</u>, 6 F.3d 770, 773 (Fed. Cir. 1993) ("The law is unequivocal that the

sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a).”).  Citing <u>NTP</u>, GSF argues that it has not infringed the asserted method claims because it has not used the asserted method, and because “Congress has consistently expressed the view that it understands infringement of method claims under [35 U.S.C. §] 271(a) to be limited to use.”[40]

(c)   <u>NTP, Inc. v. Research in Motion, Ltd.</u>

<u>NTP</u> involved the sale of wireless handheld devices and supporting software for a wireless e-mail network sold by defendant, Research In Motion (RIM), in the United States.  <u>NTP</u>, 418 F.3d at 1289-1290.  When the owners of those devices traveled abroad those devices were used outside of the United States; otherwise, the devices were used in the United States.  The Federal Circuit considered, <u>inter alia</u>, “whether the using, offering to sell, or selling of a patented invention is an infringement under section 271(a) if a component or step of the patented invention is located or performed abroad.”  <u>Id.</u> at 1315.  Since each of the process claims asserted in <u>NTP</u> recited a step that utilized an “interface” or “interface switch” that could only be satisfied by use of equipment located in Canada, the court concluded as a matter of law that the asserted process claims could not be infringed by

_____

[40]GSF’s Opposition to Transocean’s Motion for Partial Summary Judgment on Infringement, Docket Entry No. 75, p. 14.

-21-

use of RIM's system in the United States.  Id. at 1318 (citing Zoltek Corp. v. United States, 51 Fed. Cl. 829, 836 (2002) ("if a private party practiced even one step of a patented process outside the United States, it avoided infringement liability, as [§ 271(a)] was limited to acts committed within the United States")).  Before concluding that the asserted process claims could not be infringed either by an offer to sell or by a sale in the United States, the court analyzed the language used in § 271(a) in an effort to determine if a method claim could ever be infringed by a sale or by an offer to sell.  See id. at 1318-21.

Observing that § 271 did not define "offers to sell" or "sells," but merely codified the common law of infringement and did not specify which infringing acts apply to which types of claims, the court began its analysis by stating that "the precise contours of infringement of a method claim have not been clearly established."  Id. at 1319.  Since the court had in the past "considered the meaning of the phrase 'sale for importation' in the International Trade Commission's governing statute, 19 U.S.C. § 1337" and concluded that absent an explicitly stated definition Congress intended statutory terms to have their ordinary meaning, the court looked for the ordinary meaning of "sale."  Id. (citing Enercon GmbH v. International Trade Commission, 151 F.3d 1376, 1381-1382 (Fed. Cir. 1998), cert. denied, 119 S.Ct. 1803 (1999) (relying on dictionaries and the Uniform Commercial Code to

determine the ordinary meaning of "sale" used in 19 U.S.C.
§ 1337)). <u>See also</u> <u>Moss v. Merck & Co.</u>, 381 F.3d 501, 503 (5th
Cir. 2004) (recognizing that when a statute does not define a term
courts are required "to ascertain the meaning of that word through
ordinary principles of statutory construction" and that absent "a
controlling definition" the court is to "interpret statutes
according to their plain, ordinary meaning"). Citing the defini-
tion of "sale" stated in <u>Black's Law Dictionary</u>,[41] the court
concluded that "the ordinary meaning of a sale includes the concept
of a transfer of title or property. The definition also requires
as the third element 'a thing capable of being transferred.'" <u>Id.</u>
Citing <u>Minton</u>, 336 F.3d at 1378, for its conclusions that "[a]
process is a series of acts and the concept of sale as applied to
those acts is ambiguous," the court acknowledged that

> [i]t is difficult to apply this concept to a method claim
> consisting of a series of acts. . . It is difficult to
> envision what property is transferred merely by one party
> performing the steps of a method claim in exchange for
> payment by another party. Moreover, performance of a
> method does not necessarily require anything that is
> capable of being transferred.

---

[41]The definition of "sale" is:

1. The transfer of property or title for a price.

2. The agreement by which such a transfer takes place.
● The four elements are (1) parties competent to
contract, (2) mutual assent, (3) a thing capable of
being transferred, and (4) a price in money paid or
promised.

<u>Black's Law Dictionary</u> 1337 (7th ed. 1999).

-23-

Id.  Since the court found the concept of sale as applied to a series of acts is ambiguous, the court looked to legislative history.

Noting that the committee reports surrounding passage of the Process Patents Amendments Act of 1987 indicated that Congress did not treat all of the infringing acts listed in § 271(a) as applicable to method claims,[42] the court acknowledged that although it had not directly addressed the issue it had expressed a similar view in the Joy case.  Id. (citing Joy, 6 F.3d at 770).  In Joy the Federal Circuit held that "the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)," Joy, 6 F.3d at 773, and explained that "[a] method claim is directly infringed only by one practicing the patented method." Id. at 775.  Since subsequent to Joy Congress amended 35 U.S.C. § 271 to include as infringing acts "offers to sell" and "imports into the United States," the court also looked to the legislative history of those amendments.

The 1994 amendments were enacted to implement the Agreement on Trade-Related Aspects of Intellectual Property Rights adopted by

---

[42]The NTP court quoted S.Rep. No. 100-83, at 30 (1987) ("Under our current patent laws, a patent on a process gives the patentholder the right to exclude others from using that process in the United States without authorization from the patentholder. The other two standard aspects of the patent right -- the exclusive right to make or sell the invention -- are not directly applicable to a patented process."), and H.R. Rep. No. 99-807, at 5 (1986) ("With respect to the process patents, courts have reasoned that the only act of infringement is the act of making through the use of a patented process.").

the Uruguay Round of the General Agreement on Tariffs and Trade. See <u>NTP</u>, 418 F.3d at 1320 (citing Uruguay Round Agreements Act, Pub.L. No. 103-465, 108 Stat. 4809 (1994)). That agreement identified the rights to be protected as follows:

> [a] patent shall confer on its owner the following exclusive rights:
>
> (a) where the subject matter of a patent is a product, to prevent third parties not having the owner's consent from the acts of: making, using, offering for sale, selling or importing for these purposes that product;
>
> (b) where the subject matter of a patent is a process, to prevent third parties not having the owner's consent from the act of using the process, and from the acts of: using, offering for sale, selling, or importing for these purposes at least the product obtained directly by that process.

<u>Id.</u> (citing Agreement on Trade-Related Aspects of Intellectual Property Rights, Apr. 15, 1994, art. 28, H.R. Doc. No. 103-316, at 1634 (1994) (footnote omitted)). This "agreement makes clear that claimed processes are to be directly protected only from 'the act of using the process.'" <u>Id.</u> Moreover, "[t]he joint committee report from the Senate reflects the same understanding: 'The list of exclusive rights granted to patent owners is expanded to preclude others from offering to sell or importing products covered by a U.S. patent or offering to sell the products of patented processes.'" <u>Id.</u> (quoting S. Rep. 103-412, at 230 (1994), 1994 U.S.C.C.A.N. 3773, 4002). The <u>NTP</u> court concluded that "the legislative history of section 271(a) indicates Congress's

understanding that method claims could only be directly infringed by use." Id. at 1320.

The NTP court then held that

the jury could not have found that [the defendant] infringed the asserted method claims under the "sells" or "offers to sell" prongs of section 271(a). We need not and do not hold that method claims may not be infringed under the "sells" and "offers to sell" prongs of section 271(a). Rather, we conclude only that [the defendant's] performance of at least some of the recited steps of the asserted method claims as a service for its customers cannot be considered to be selling or offering to sell the invention covered by the asserted method claims. The sale or offer to sell handheld devices is not, in and of itself, enough. Thus we conclude as a matter of law that [the defendant] did not sell or offer to sell the invention covered by [the plaintiff's] method claims within the United States.

Id. at 1320-1321.

(d)   Analysis

GSF does not dispute that its Atlantis Project bid recites all the steps of the asserted methods claims, that the DD II will be operating in the Gulf of Mexico, or that all steps of the two method claims for which Transocean seeks summary judgment are capable of being performed in domestic waters.  Conceding that there is no case law directly on point, GSF argues that Transocean is unable to show entitlement to summary judgment on its asserted methods claims because courts have rejected efforts to apply the "offers to sell" and "sell" prongs of § 271(a) to method claims and have, instead, limited actions for direct infringement of method

-26-

claims brought under § 271(a) to use of the asserted methods. Citing NTP, 418 F.3d at 1282, and Joy, 6 F.3d 770, 773 (Fed. Cir. 1993), GSF argues that

> [a]lthough stopping short of holding that method claims may never be infringed under the "sells" and "offers to sell" prongs on § 271(a), the Federal Circuit nonetheless observed that the legislative history repeatedly acknowledged Congress' understanding that method claims could only be directly infringed through "use" of a particular method."[43]

Transocean argues that "[a]lthough it may be reasonable to conclude from the [legislative history] . . . that [§ 271(a)'s] 'offers to sell' language does not apply to methods,"[44] since Congress chose not to distinguish between apparatus claims and method claims as was clearly done in the legislative history, the legislative history does not overcome the plain meaning of the statute.[45]  Citing Glaxo Operations UK Ltd. v. Quigg, 894 F.2d 392 (Fed. Cir. 1990), Transocean argues that § 271(a)'s prohibition of "offers to sell" must be applied to method claims until Congress alters the plain meaning of the statute.[46]  In Glaxo the court explained that when the terms of a statute are clear, courts look

---

[43]GSF's Opposition to Transocean's Motion for Partial Summary Judgment on Infringement, Docket Entry No. 75, pp. 14-15.

[44]Transocean's Reply in Support of Its Motion for Partial Summary Judgment on Infringement, Docket Entry No. 78, pp. 8-9 & n.2.

[45]Id.

[46]Id. at p. 9.

to legislative history only "to determine whether there is a clearly expressed legislative intention contrary to the statutory language." Id. at 395. The court expressly stated that if the meaning of the statute is plain, courts are not free to analyze legislative history from a neutral viewpoint but are, instead, obligated to demand an "extraordinary showing of contrary intentions." Id. at 396.

Because the court does not find a conflict between the plain language of the statute, the legislative history, and the case law, the court concludes that the prohibition against "offers to sell" added to § 271(a) in 1994 is not applicable to the method claims for which Transocean seeks summary judgment. The inclusion of the "offers to sell" language in § 271(a) means that the patent holder no longer has to wait for an actual infringing sale to occur before filing suit. See Quality Tubing, Inc. v. Precision Tube Holdings Corp., 75 F.Supp.2d 613, 623-624 (S.D. Tex. 1999) (citing 35 U.S.C. § 271(i)). Instead, a patent holder can now sue a competitor for infringement at an earlier stage than previously allowed, i.e., when an offer to make an infringing sale has been made. However, no liability exists for an offer to sell if the sale offered would not itself constitute an act of infringement. Id. Similarly, an offer to sell an infringing method can only constitute an earlier stage of an infringing activity if sale of the infringing method would itself constitute an act of infringement.

-28-

The Federal Circuit has long held that a method claim is infringed only when the method is used or practiced.  <u>Joy</u>, 6 F.3d at 773.  The court is not persuaded that the "offers to sell" language added to § 271(a) in 1994 allows a patent holder to sue a competitor for infringement of method claims at an earlier stage than previously allowed.  Since Transocean merely argues that GSF's Atlantis Project bid includes an offer to perform the method described in claims 20 and 21 of the '781 patent, the court is not persuaded that Transocean is entitled to summary judgment on its claim that GSF infringed those claims by offering to sell them in its Atlantis Project bid.[47]

---

[47]Although at least one court has equated performance of a patented method with sale of a patented method and suggested that § 271(a)'s prohibition against "offers to sell" applies to offers to perform a patented method because "the purpose of [adding 'offer to sell'] was to permit a patentee to act against threatened infringing sale by establishing a cause of action before the actual sale occurred," <u>Recycling Sciences International, Inc. v. Soil Restoration and Recycling, L.L.C.</u>, 2001 WL 969040, *1-*2 (N.D. Ill. 2001), the court is not persuaded that this construction comports with either the statutory language, the legislative history of the 1994 amendments, or the long line of cases holding that method claims can only be infringed by use (as opposed to "makes" or "sells"). <u>See</u> <u>NTP</u>, 418 F.3d at 319 (citing cases).  <u>See also</u> <u>O'Neill v. Department of Housing and Urban Development</u>, 220 F.3d 1354, 1360 (Fed. Cir. 2000) ("It is a well recognized principle of statutory construction that '[w]here Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'").

2.   <u>Does the Atlantis Bid Contain an Offer to Sell an
     Infringing Method or an Apparatus?</u>

GSF argues that even if § 271(a)'s prohibition against "offers
to sell" does apply to method claims, that Transocean is not
entitled to summary judgment on its claims for infringement of
claims 20 and 21 of the '781 Patent because the Atlantis Project
bid offered to sell an apparatus -- the DD II -- and did not offer
to sell a method.[48]   Transocean argues that GSF's Atlantis Project
bid constitutes an offer to sell an infringing method because it
includes "a description of a method for dual activity drilling and
a price."[49]   Citing <u>Joy Technologies</u>, 6 F.3d at 773, GSF asserts
that method claims are "not directly infringed by the mere sale of
an apparatus capable of performing the claimed process,"[50] and
argues that the description cited by Transocean from the Atlantis
Project bid reveals the DD II's "capabilities, but does not
transform a lease (sale) of the DD II into a lease (sale) of a
method of using the rig."[51]   The court agrees.

─────────────────

[48]See GSF's Opposition to Transocean's Motion for Partial
Summary Judgment on Infringement, Docket Entry No. 75, pp. 14-16.

[49]Transocean's Motion for Partial Summary Judgment on
Infringement, Docket Entry No. 71, p. 13.

[50]See GSF's Opposition to Transocean's Motion for Partial
Summary Judgment on Infringement, Docket Entry No. 75, p. 16.

[51]<u>Id.</u>

The decision most closely on point is <u>3D Systems, Inc. v. Aarotech Laboratories, Inc.</u>, 160 F.3d 1373 (Fed. Cir. 1998).  In <u>3D Systems</u> the patents at issue involved equipment that produces three-dimensional models of products during design and development. Plaintiff alleged that the defendants, headquartered in Virginia, sent letters to companies in California quoting prices for the sale of allegedly infringing equipment.  Plaintiff claimed that by sending the letters defendants infringed the patent by making an offer to sell the patented equipment; no actual sale took place. <u>Id.</u> at 1378.  The question before the court was whether California could exercise specific personal jurisdiction over the defendants. To determine whether the cause of action for infringement arose out of, or was directly related to, the activities directed at California the court had to decide whether defendants had made an offer to sell the allegedly infringing equipment.  The Federal Circuit stated that the "offers to sell" language "represents a distinct change to the bases for patent infringement, because liability arose previously only as the result of an actual sale." <u>Id.</u>  The court explained that

> [o]ne of the purposes of adding "offer[ ] to sell" to
> § 271(a) was to prevent exactly the type of activity
> [defendant] has engaged in, i.e., generating interest in
> a potential infringing product to the commercial
> detriment of the rightful patentee.

<u>Id.</u> at 1379.  The court concluded that "[a]s a matter of federal statutory construction, the price quotation letters can be regarded

-31-

as 'offer[s] to sell' under § 271 based on the substance conveyed in the letters, i.e., a description of the allegedly infringing merchandise and the price at which it can be purchased." Id.

Although Transocean argues that GSF's description of the steps that it alleges would infringe claims 20 and 21 of the '781 Patent if performed were intended to, and did, generate commercial interest in the DD II,[52] Transocean fails to submit any evidence that the Atlantis Project bid either generated commercial interest in the proposed methods or included a price for performing them. Since Transocean fails to cite any evidence showing that the Atlantis Project bid included a price for performing the proposed methods, the court is not persuaded that Transocean is entitled to judgment as a matter of law that GSF infringed method claims 20 and 21 of the '781 patent by offering to perform them. See Joy, 6 F.3d at 773 ("the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)").

3.   Conclusions as to Method Claims

The court concludes that Transocean has failed to demonstrate that it is entitled to summary judgment on its claims that GSF infringed method claims 20 and 21 of the '781 Patent by offering to sell those methods in its Atlantis Project bid to BP because

---

[52]Transocean's Reply in Support of Its Motion for Partial Summary Judgment on Infringement, Docket Entry No. 78, p. 9.

Transocean has failed to persuade the court that § 271(a)'s prohibition against "offers to sell" encompasses offers to perform an infringing method, and Transocean has not submitted any evidence that GSF has used or practiced the infringing methods.  In the alternative, the court concludes that Transocean has failed to show that it is entitled to judgment as a matter of law on these two method claims because Transocean has failed to present evidence showing that GSF's Atlantis Project bid included a price for performing them.

## IV.  Conclusions and Order

For the reasons explained above, the court concludes that Transocean is entitled to summary judgment on its claims for infringement of apparatus claims 10-12 of the '781 patent, claims 9, 14-16, and 27-29 of the '071 patent, and claim 17 of the '069 patent, but is not entitled to summary judgment on its claims for infringement of method claims 20 and 21 of the '781 patent. Accordingly, Transocean's Motion for Partial Summary Judgment (Docket Entry No. 71) is **GRANTED IN PART** and **DENIED IN PART**.

**SIGNED** at Houston, Texas, on this 29th day of November, 2005.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-33-