UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC. | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO: H-03-2910 |
| GLOBALSANTAFE CORPORATION; GLOBAL MARITIME, INC.; GLOBAL SANTA FE DRILLING COMPANY; GLOBAL MARITIME DRILLING COMPANY | § § § § § § | |
| Defendants. | § § | |

## PLAINTIFF TRANSOCEAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PRIOR ART

Charles B. Walker
  State Bar No. 00794808
  SD. Tex I.D. No. 19307
Winstol D. Carter
  SD. Tex I.D. No. 2934
Michael S. McCoy
  SD. Tex I.D. No. 24498
Fulbright & Jaworski, LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
Attorneys for Plaintiff Transocean

Dated: May 5, 2006

31120281.2

## TABLE OF CONTENTS

Page

SUMMARY ..................................................................................................... 1
I. STATEMENT OF THE FACTS ............................................................. 2
    A.   Transocean inventors conceived the dual activity invention and Transocean soon after filed a patent .......................................... 2
    B.   Maritime Engineering's ME5500 Report ................................... 2
    C.   Maritime Hydraulics' Twin Ram Rig ........................................ 3
II. SUMMARY JUDGMENT STANDARDS ............................................... 4
III. ARGUMENT AND AUTHORITIES ...................................................... 6
    A.   The ME5500 Is Not Prior Art ..................................................... 6
        1.   There was no knowledge or use in the United States of the ME5500 pre-dating Transocean's conception of the dual activity rig ................................................................................. 7
        2.   There was no printed publication of the ME5500 pre-dating Transocean's conception of the dual activity rig ...................... 8
    B.   The Twin Ram Rig Is Not Prior Art. ......................................... 9
        1.   There was no knowledge or use in the United States of the Twin Ram Rig that pre-dated Transocean's conception of the dual activity invention ......................................................... 10
        2.   There was no printed publication of the Twin Ram Rig that pre-dated Transocean's conception of the dual activity invention ..... 11
CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

## CASES

*Aspex EyeswearEyewear, Inc. v. Concepts in Optics, Inc.*, 111 Fed. Appx. 582,
586 (Fed. Cir. 2004) ........................................................................................... 11

*Bergstrom v. Sears, Roebuck & Co.*,
457 F. Supp. 213 .................................................................................................. 7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................ 4

*Constant v. Advanced Micro-Devices, Inc.*,
848 F.2d 1560 (Fed. Cir. 1988), cert. denied, 488 U.S. 892 (1988) ................... 7

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994) ............................................................................... 5

*Mahurkar v. C.R. Bard, Inc*,
79 F.3d 1572 (Fed. Cir. 1996) ............................................................................. 5

*Norian Corp. v. Stryker Corp.*,
363 F.3d 1321 (Fed. Cir. 2004) ....................................................................... 5, 7

*Northern Telecom, Inc. v. Datapoint Corp.*,
908 F.2d 931 (Fed. Cir. 1990) .......................................................................... 5, 7

*Preemption Devices, Inc. v. Minnesota Mining & Manufacturing Co.*,
732 F.2d 903 (Fed. Cir. 1984) ............................................................................. 7

*Stamicarbon, N. V. v. Escambia Chemical Corp.*,
300 F. Supp. 1209 (N.D. Fla. 1969) ................................................................ 9, 11

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
247 F.3d 1316 (Fed.Cir. 2001) ............................................................................ 7

*Total Containment v. Environ Products*,
921 F. Supp. 1355 (E.D. Pa. 1995) .................................................................... 12

31120281.2

## STATUTES

Fed. R. Civ. P. 56(a) ................................................................................................6

35 U.S.C. § 102(a) ................................................................................7, 9, 11, 19

35 U.S.C. § 282 ........................................................................................................7

# PLAINTIFF TRANSOCEAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PRIOR ART ALLEGATIONS

Plaintiff Transocean moves for summary judgment that the ME5500 Report and the Twin Ram Rig Brochure are not prior art to Transocean's dual activity patents because GSF has no evidence that the references were known or used in the United States or printed publications before the Transocean inventors conceived of their dual activity invention.

## SUMMARY

This motion is related to Transocean's Cross Motion on Conception. Doc. No. 97. The Court's ruling on the conception date would simplify many if not all of the issues presented in this motion. Transocean has urged a conception date of February 2, 1996, and an alternative date of February 8, 1996. The ME5500 reference is dated February 8, 1996. The Twin Ram Rig is dated February 20, 1996. Thus, a conception date of February 2 would conclusively establish that the ME5500 and Twin Ram Rig are not prior art. A conception date of February 8, 1996, would conclusively establish that the Twin Ram Rig is not prior art. If the court does not grant Transocean motion on conception, GSF still has the burden of proving when the reference were published and that the Transocean inventor's did not conceive their invention before the reference were published.

- The ME5500 was created in Norway and distributed to a small hand full of clients. There is no evidence that the ME5500 was known or used in this country or published before the Transocean inventors conceived their dual activity invention.

- The Twin Ram Rig was created in Norway and may have been distributed in Norway on February 20, 1996, and was faxed to Transocean on March 19, 1996. There is no evidence that the Twin Ram Rig was known or used in this country or published before the Transocean inventors conceived their dual activity invention.

31120281.2

# I. STATEMENT OF THE FACTS

Transocean sued defendants (collecttively "GSF") for infringing the claims of its dual activity patents. The Court found that GSF infringes Transocean's apparatus claims as a matter of law. *See* Order, Doc. No. 84. Transocean asserts five claims against GSF: claim 23 of Patent No. 6,056,071, claims 10 and 17 of Patent No. 6,068,069, and claims 11 and 20 of Patent No. 6,047,781. GSF alleges the asserted claims are invalid in view of the ME5500 and Twin Ram Rig.

## A. The Transocean inventors conceived of their dual activity invention on February 2, 1996.

The Transocean inventors conceived of their dual activity invention on February 2, 1996. Herrmann Decl. ¶ 8-9, Ex. 1.[1] The conception date is corroborated by a co-worker, project memos, electronically dated drawings, and drilling timelines. Herrmann Decl. ¶¶ 8-11, 16, 18-29, Ex. 1. The invention was disclosed to Transocean's patent attorney, Bradford Kile, on February 23, 1996. Herrmann Decl. ¶ 31, Ex. 1; Kile Decl., ¶¶ 3-12, Ex. 2. Additional drawings were completed over the next few weeks, as Kile ordered a prior art search, reviewed the results, and prepared an opinion that the invention was patentable. Kile Decl. ¶ 13-19; Ex. 2; Herrmann Decl. ¶ 32, Ex. 1. Kile filed the first Transocean patent application on May 3, 1996. Kile Decl. ¶ 24, Ex. 2.

## B. The ME5500 Report

Maritime Engineering developed the ME5500 Dual Rig System in early 1996. Fjoran Decl. ¶ 4, Ex. 3.[2] The ME5500 has a conventional drilling derrick and a light completion derrick.

---

[1] The facts relating to Transocean's invention of the dual activity rig are fully set forth and developed in its Response to and Cross-Motion for Partial Summary Judgment Concerning Conception Doc. No. 97, and are fully incorporated herein by reference.

[2] For purposes of this motion, Transocean assumes the facts in Sturla Fjoran's declaration.

Mr. Fjoran and his project engineer completed the ME5500 Report on February 8, 1996. Mr. Fjoran gave the report to four or five clients. He believes the first report was given to Smedvig while he was visiting Norway on February 8th or 9th. *Id.* ¶ 5. He believes he gave the second report to Transocean ASA (prior to its merger with Plaintiff) while visiting Norway on February 21, 1996. *Id.* ¶ 5. Between March 10th and 19th, Mr. Fjoran visited Houston and gave the report to two other clients, Global Marine (a predecessor in interest to GSF) and Sonat (predecessor to Transocean). *Id.* Mr. Fjoran may have given the report to SantaFe (now part of GSF), but he does not recall the date. *Id.* A copy of the report was found in SantaFe's executive files. *Id.* He would have given the report to anyone requesting a copy. *Id.*

### C. The Twin Ram Rig

In January 1996, Maritime Hydraulics (no relation to Maritime Engineering) began development of drilling rig for Smedvig. The plans resulted in the Twin Ram Rig. Skjelbred Depo. at 13, 49, Ex. 4.

Vidar Skjelbred of Maritime Hydraulics made a marketing trip to Houston in early February 1996. On February 5, he met with colleagues at Maritime Hydraulics' Houston office. During that meeting he was told that Inventor Scott from Sonat (predecessor to Transocean) was working on a new drilling rig project ("the drilling rig of the future"). *Id.* at 33-35. During this trip, Skjelbred did not discuss the Twin Ram Rig concept with anyone at Transocean. *Id.* at 30-35, 37, 87-88.

By February 20, 1996, Maritime Hydraulics prepared drawings of the Twin Ram Rig in Norway. *Id* at 49, 104-05. The drawings were prepared for and presented to Smedvig at a meeting in Norway on February 21, 1996. *Id.* at 17-8, 31, 143. The drawings are stamped as confidential property of Maritime Hydraulics to prevent the drawings from falling into competitors' hands. *Id.* at 90-1, 141. During this project, Smedvig's policy was to treat as

confidential any drawings marked as such. *Id.* at 90-92, 141-142. Smedvig and Maritime Hydraulics later entered into a confidentiality agreement regarding the Twin Ram Rig. *Id.* at 94-5.

On March 7, 1996, Skjelbred met with Transocean. *Id.* at 38. Inventor Scott sat in on the meeting, and afterwards took Skjelbred to a separate room and shared with him some ideas regarding the dual activity rig. *Id.* at 37-8. Skjelbred, unaware of the confidentiality agreement, told Scott about Maritime Hydraulics' work on dual activity. *Id.* at 39-40. However, Skjelbred did not discuss details of Maritime Hydraulics' dual activity concept during his conversation with Scott. *Id.* at 78-79. Skjelbred noted only that Maritime Hydraulics had a "parallel concept" under development. *Id.* at 80.

On March 19, Skjelbred faxed to Transocean information containing a brief introduction of the Twin Ram Rig and a price quote on a pipe handling system that Scott requested during the Houston meeting. *Id.* at 46-47. The faxed materials included some of the drawings presented to Smedvig on February 20, 1996. *Id.* at 98.

Maritime Hydraulics may have advertised the Twin Ram Rig at the Offshore Technology Conference in May 1996. *Id.* at 103. Maritime Hydraulics may have marketed the Twin Ram Rig to other customers in mid- or late 1996. *Id.* at 99-100.

## II. SUMMARY JUDGMENT STANDARDS

Transocean is entitled to partial summary judgment if the pleadings, discovery products on file, affidavits or declarations show that there are no genuine issues about any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden of proof in a summary judgment proceeding is on the same party who would bear the burden of proof at trial. *Id.* at 324. The non-moving party cannot satisfy its summary judgment burden with conclusive allegations,

unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. ARGUMENT AND AUTHORITIES

Transocean has conclusively demonstrated, with uncontroverted and corroborating evidence, that its patent claims enjoy a conception date of February 2, 1996, or, alternatively, a conception date no later than February 8, 1996. Pl. Resp. To and Cross-Mot. for Part. Summ. Judg. Concerning Conception, Doc. No. 97. Once conceived, the inventors proceeded with reasonable diligence to filing. *Id.* Transocean incorporates herein all arguments, authorities, and summary judgment evidence from its Response and Cross-Motion by reference.

A person shall be entitled to a patent unless the invention (1) was known or used by others in this country, or (2) patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent. 35 U.S.C. § 102(a). Thus, to be prior art, a reference must be know or used in this country or published before the *invention* date. *Mahurkar v. C.R. Bard, Inc*, 79 F.3d 1572, 1577 (Fed. Cir. 1996).

By producing evidence of its conception date and diligence to reduction to practice, Transocean met its burden of production, and the burden shifts to GSF to prove the ME5500 and Twin Ram Rig are prior art. *Mahurkar v. C.R. Bard, Inc*, 79 F.3d 1572, 1577 (Fed. Cir. 1996).

Because patents are presumed valid, a party trying to invalidate patent claims must prove the claims are invalid by ***clear and convincing*** evidence. *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1326 (Fed. Cir. 2004). Under *Mahurkar*, GSF must first produce clear and convincing evidence of when the reference was known or used in this country or published. *Mahurkar v. C.R.Bard, Inc.*, 79 F.3d at 1578. GSF must then prove by clear and convincing evidence that the inventors did not conceive the invention before the publication date and proceed with reasonable diligence to the filing date. *Id.* at 1578.

31120281.2

## A. The ME5500 Is Not Prior Art

GSF has no clear and convincing evidence that the ME5500 Report is prior art. Accordingly, Transocean is entitled to judgment as a matter of law that the ME5500 Report is not prior art.

### 1. The ME5500 was not know or used in this country before Transocean's invention date.

GSF has no clear and convincing evidence that the ME5500 Report was know or used in this country. *See* Pl. Resp. to and Cross-Mot. for PSJ Concerning Conception, at 18-19, Doc. No. 97.

GSF has no evidence that prior to March 10, 1996, the ME5500 Report was ever in this country. Mr. Fjoran created the ME5500 Report in Norway. He gave the report to Smedvig in Norway on February 8 or 9. Fjoran Decl. ¶ 5, Ex. 3. He gave the report to Transocean ASA in Norway on February 21, 1996. Thus, GSF has no clear and convincing evidence that creating and distributing two copies the report in Norway establishes that the report was known or used in the United States.

Fjoran states that he visited Houston on March 10 and 19, 1996, and gave the ME5500 Report to Global Marine and Sonat (now known as Transocean). *Id.* He may have given Santa Fe a copy, but cannot remember the date. *Id.* Fjoran simply gave the brochure to a short, select list of only two or three clients in the United States. GSF has no clear and convincing evidence that giving the report to three companies establishes that the ME5500 Report was known or used in this country. Thus, GSF lacks clear and convincing evidence of when the ME5500 became public knowledge.

Further, even if GSF could prove that the ME5500 Report was know or used in this country on a particular date, it has no clear and convincing evidence that Transocean did not

invent dual activity before that date.

### 2. The ME5500 Report was not a published before Transocean invention date

GSF has no clear and convincing evidence that the ME5500 was published before Transocean's invention date. *See* Pl. Resp. To and Cross-Mot. for PSJ Concerning Conception, at 18-19, Doc. No. 97.

The statutory phrase "printed publication" in 35 U.S.C. § 102(a) means that before the critical date the reference must have been sufficiently accessible to the public interested in the art. *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 892 (1988). Dissemination and public accessibility are the keys to the legal determination of whether a prior art reference was "published." *Id.*

Information that is not widely disseminated or accessible to the public is not a printed publication. *See Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 732 F.2d 903, 906 (Fed. Cir. 1984) (distribution of six copies of a brochure to a single person for use in obtaining financing prior to the critical date does not amount to a "printed publication."); *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990) (four reports on a complex military system that were distributed to approximately 50 persons or organizations involved in a project were not shown to be so accessible to the public as to constitute printed publications); *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321 (Fed. Cir. 2004) (an abstract prepared by a presenter at a professional meeting is not a printed publication and not disseminated); *Total Containment v. Environ Prods.*, 921 F. Supp. 1355 (E.D. Pa. 1995), *aff'd in part and vacated in part on other grounds*, 106 F.3d 427 (brochures from factory discussing disputed pump system were not "printed publications" where only one organization had received brochures and it was doubtful that organization had released them to defendant); *Bergstrom v.*

*Sears, Roebuck & Co.*, 457 F. Supp. 213 (D.Minn. 1978), *aff'd* 599 F.2d 62 (8th Cir. 2003) (publication must not only be intended for public, but must actually be published in a manner that anyone who chooses may avail himself of the information).

Maritime Engineering did not disseminate or make publicly available the ME5500 Report. Fjoran estimates that the ME5500 Report was supplied to one client, Smedvig, on February 8th or 9th. Fjoran Decl. at ¶ 5, Ex. 3. Fjoran also recalls that he gave the report to one client on February 21st, two more between March 10 and 19, and one more at an unknown date. *Id.* There is no evidence that Maritime Engineering disseminated the ME5500 Reports or made them otherwise available to anyone beyond a handful of clients.

GSF has no clear and convincing evidence that the ME5500 was ever published. As the ME5500 Report was given to only a handful of clients, it was not a printed publication. Fjoran could only estimate that he gave a copy of the ME5500 Report to Smedvig on February 8th or 9th. *Id.* Fjoran's inability to pinpoint a date in his declaration shows that evidence of any alleged printed publication falls far short of being clear and convincing. Most generously, the earliest date that GSF might hope to prove would be February 9th. If the Court finds this as potential clear and convincing evidence of a printed publication, then the publication is still after Transocean's February 2, 1996, conception date. It is also after February 8, 1996, the latest possible conception date. Likewise, the February 21st and mid-March dates all post-date Transocean's conception date.

Because GSF has no evidence that the ME5500 was published before Transocean's invention date, Transocean is entitled to judgment as a matter of law that the ME5500 is not a printed publication, and is therefore not prior art.

### B. The Twin Ram Rig Is Not Prior Art

GSF has no clear and convincing evidence that the Twin Ram Rig is prior art.

31120281.2

Accordingly, Transocean is entitled to judgment as a matter of law that the Twin Ram Rig is not prior art.

### 1. The Twin Ram Rig was not know or used in this country before Transocean's invention date

To show that an invention was "known or used by others in this country," a party challenging validity must show that it was "publicly" known or used by others in the United States; secret uses which are not publicly known or disclosed do not constitute prior art. *Stamicarbon, N. V. v. Escambia Chemical Corp.* 300 F.Supp. 1209, 1215 (N.D. Fla. 1969) *mod. on other grounds*, 430 F.2d 920 (5th Cir. 1970), *cert. denied*, 400 U.S. 944 (1970).

Vidar Skjelbred of Maritime Hydraulics made a marketing trip to Houston in early February 1996. While he learned that Sonat (predecessor to Transocean) and inventor Scott were working on a new project described as "the drilling rig of the future," he did not discuss the Twin Ram Rig concept with anyone at Transocean. *Skjelbred Depo.* at 30-35, 37, 87-88, Ex. 4.

Maritime Hydraulics created drawings of the Twin Ram Rig by February 20, 1996, in Norway. The drawings — all stamped with a confidentiality statement — were given to Smedvig in Norway during a presentation on February 21, 1996. *Id.* at 90-91, 141-43. Smedvig, another Norwegian company, and Maritime Hydraulics entered into a confidentiality agreement regarding the Twin Ram Rig to ensure that information about the Twin Ram Rig did not reach others. *Id.* at 94-95. During the Twin Ram Rig project, Smedvig had a policy to treat as confidential any drawings marked as such. *Id.* at 90-92, 141-142.

Skjelbred, unaware of the confidentiality agreement, testified that during a meeting in Houston he discussed the Twin Ram Rig with inventor Scott on March 7th. *Id.* at 37-8. Skjelbred did *not* discuss any specifics of the Twin Ram Rig during his conversation with Scott. *Id.* at 78-79. Skjelbred noted only that Maritime Hydraulics had a "parallel concept" under

development. *Id.* at 80. Thus, the March 7th contact between Skjelbred and Scott is not clear and convincing evidence that the Twin Ram Rig was known to the public.

On March 19th, Skjelbred faxed to Transocean information about the Twin Ram Rig. *Id.* at 46-47. These materials included some of the drawings sent to Smedvig on February 20, 1996. *Id.* at 98.

GSF cannot prove by clear and convincing evidence that the Twin Ram Rig was available to the public in the United States until at least March 19th. The drawings given to Smedvig outside the United States were marked and presumptively treated as confidential. Skjelbred did not discuss any aspects of the Twin Ram Rig with Transocean, who only learned details upon receiving a fax on March 19, 1996. Thus, there is no genuine issue of fact that there was no public knowledge in the United States prior to Transocean's conception date.

There is no genuine issue of fact that the Twin Ram Rig was known or used in the United States prior to March 19th, when Skjelbred faxed information about the Twin Ram Rig to Transocean, which was the earliest knowledge in the United States of the Twin Ram Rig, even if not public. As March 19th is the earliest plausible date that the Twin Ram Rig could have been public knowledge in the United States, Transocean is entitled to judgment as a matter of law that the Twin Ram Rig was not prior art to Transocean's asserted patent claims.

### 2. The Twin Ram Rig was not published before Transocean's invention date

While Maritime Hydraulics prepared drawings on its Twin Ram Rig by February 20, 1996, the drawings were not a printed publication because the set was confidential. As the drawings are not a printed publication, the reference is not prior art.

Where there is sufficient evidence to show that a document was distributed under confidential or restricted conditions, courts have found that a document is not a "printed

-10-
31120281.2

publication" within the meaning of 35 U.S.C. 102(a). *See Stamicarbon v. Escambia Chemical Corp.*, 300 F. Supp. at 1215 (private distribution of internal and confidential memoranda or correspondence, relating to experimentation and confidential information, does not constitute evidence of a "printed publication"); *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990) (no printed publication where reports contained language "reproduction or further dissemination is not authorized" and reports were housed in a library where access was restricted to persons authorized by the corporation responsible for developing the project); *Aspex Eyewear, Inc. v. Concepts in Optics, Inc.*, 111 Fed. Appx. 582, 586 (Fed. Cir. 2004) (privately shown drawings did not constitute printed publications).

The drawings of the Twin Ram Rig prepared by February 20th were marked confidential, and given to Smedvig on February 21st in Norway. Skjelbred Depo. at 90-91, 141-43, Ex. 4. As a matter of policy on this project, Smedvig held the drawings in confidence. *Id.* at 90-92, 141-42. These confidential drawings do *not* constitute a printed publication. Quite the contrary, Maritime Hydraulics made efforts to keep information about the Twin Ram Rig between Smedvig and itself. When Skjelbred spoke with Scott on March 7th, he did so without knowledge of the confidentiality agreement Maritime Hydraulics had with Smedvig. Nonetheless, he still did not disclose any details of the Twin Ram Rig project. *Id.* at 78-80. Skjelbred did not disclose information about the Twin Ram Rig to Transocean until at least March 19, 1996.

GSF has no clear and convincing evidence regarding a publication date prior to Transocean's conception date. Disclosure of the Twin Ram Rig is not a printed publication by February 21st, because it was confidential. Even if it is a printed publication, it falls after Transocean's conception date. Thus, there is no issue of material fact as to whether there is clear

and convincing evidence of any printed publication of the Twin Ram Rig that pre-dates Transocean's invention, and Transocean is entitled to judgment as a matter of law that the Twin Ram Rig is not prior art that invalidates its patent of the dual activity rig apparatus.

GSF falls far short in meeting its burden to show by clear and convincing evidence that Transocean did not conceive, of its dual activity invention prior to the publication of the Twin Ram Rig. Therefore, GSF has not produced clear and convincing evidence sufficient to create a fact issue regarding Transocean's invention prior to the earliest potential Twin Ram Rig publication date, Transocean is entitled to judgment as a matter of law that the Twin Ram Rig is not prior art.

## CONCLUSION

Plaintiff Transocean asks this Court to grant partial summary judgment that neither the ME5500 nor the Twin Ram Rig constitute prior art to Transocean's dual activity patents.

31120281.2

Dated: May 5, 2006

Respectfully submitted,

*/s/ Charles B. Walker, Jr.*
Charles B. Walker, Jr.
 State Bar No. 00794808
 SD. Tex I.D. No. 19307
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

Attorney-in-Charge for Plaintiff Transocean

OF COUNSEL:
Fulbright & Jaworski L.L.P.
Winstol D. Carter
 SD. Tex I.D. No. 2934
Michael S. McCoy
 SD. Tex I.D. No. 24498
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: 713-651-5151
Facsimile: 713-651-5246

31120281.2

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above regarding PLAINTIFF TRANSOCEAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PRIOR ART ALLEGATIONS has been served on May 5, 2006.

> William C. Slusser
> Slusser, Wilson & Partridge LLP
> 333 Clay Street, Suite 4890
> Houston, Texas 77002
> Telephone: (713) 860-3300
> Facsimile: (713) 860-3333
> *Via Electronic Notice and Hand Delivery*

*[signature]*