IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. | § § § § § | |
| Plaintiff, | | |
| vs. | § § | C.A. NO. H-03-2910 |
| GLOBALSANTAFE CORPORATION, GLOBAL MARINE, INC. GLOBALSANTAFE DRILLING COMPANY, GLOBAL MARINE DRILLING COMPANY | § § § § § § § | |
| Defendants. | § | |

**GLOBALSANTAFE'S OPPOSITION TO TRANSOCEAN'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ON PRIOR ART**

**TABLE OF CONTENTS**

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.  The ME 5500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.  MH Twin Ram Rig . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      A.    The MH Twin Ram Rig and ME 5500 Were Printed
            Publications and Were Publicly Known Before Transocean's
            Conception . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
            1.    A Document Need Only Be Available to "the Interested Public" . . . . . . . 6
            2.    The Presence of Confidentiality Language is not Determinative . . . . . . . . 8
            3.    The Twin Ram Rig Drawings Were Not Confidential and
                 Were Available to Interested Drilling Contractors . . . . . . . . . . . . . . . . . . 8
            4.    The ME 5500 Was Not Confidential and Was Available to
                 Interested Drilling Contractors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      B.    Transocean Had Actual Knowledge of MH Twin Ram Rig and
            ME 5500, Making Them Prior Art for Derivation and Obviousness
            Purposes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **TABLE OF AUTHORITIES**

**CASES**

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cooper Cameron Corporation v. Kvaerner Oilfield Prods., Inc.*,
  291 F.3d 1317 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

*Crane Co. v. Goodyear Tire & Rubber Co.,* 577 F. Supp.186 (N.D. Ohio 1983) . . . . . . . . . . . 7, 8

*In re Fout*, 675 F.2d 297 (C.C.P.A. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Massachusetts Institute of Technology v. AB Fortia,*
  774 F.2d 1104 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . 10

*Riley & Ephriam Const. Co., Inc. v. U.S.* 408 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . 6

*Riverwood Int'l Corp v. R.A. Jones & Co., Inc.*,
  324 F.3d 1346 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Vetco Offshore Industries, Inc. v. Rucker Company*,
  448 F. Supp. 1203 (N.D. Cal. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**RULES AND STATUTES**

35 U.S.C. § 102(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

35 U.S.C. § 102(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. | § § § § § | |
| Plaintiff, | | |
| vs. | § § § | C.A. NO. H-03-2910 |
| GLOBALSANTAFE CORPORATION, GLOBAL MARINE, INC. GLOBALSANTAFE DRILLING COMPANY, GLOBAL MARINE DRILLING COMPANY | § § § § § § § | |
| Defendants. | § | |

**GLOBALSANTAFE'S OPPOSITION TO TRANSOCEAN'S MOTION
FOR PARTIAL SUMMARY JUDGMENT ON PRIOR ART**

Defendants (collectively "GlobalSantaFe") file this opposition to Plaintiff Transocean's Motion for Partial Summary Judgment on Prior Art.

Under 35 U.S.C. § 102(a) a person is not entitled to a patent if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." Under 35 U.S.C. § 102(f), a person is not entitled to a patent if "he did not himself invent the subject matter sought to be patented."

Transocean's motion is fact intensive and will likely be resolved by the Court's ruling on GlobalSantaFe's pending motion for partial summary judgment concerning the date of conception. Transocean's claimed conception date is the primary basis for its argument that Maritime Hydraulics' Twin Ram Rig and Maritime Engineering's ME 5500 are not prior art. However,

Transocean has no competent evidence and cannot prove as a matter of law its claimed conception date of February 2 or 8, 1996. Because Transocean has failed to produce the requisite evidence to prove an earlier date, Transocean's conception date is presumed to be the date of Transocean's initial patent application, May 3, 1996.[1]

The Maritime Hydraulics ("MH") Twin Rig and ME 5500 were known in this country and were described in printed publications prior to Transocean's conception of the "inventions" covered by the patents-in-suit, and they are thus prior art under 35 U.S.C. § 102(a). Moreover, Transocean had actual knowledge of both designs, and they are thus prior art for derivation under 35 U.S.C. § 102(f) and for obviousness under 35 U.S.C. § 103. Because there is substantial evidence that the MH Twin Ram Rig and the ME 5500 were sufficiently available to the interested public before Transocean's conception date – and thus are prior art – Transocean's motion for summary judgment should be denied.

## I. BACKGROUND

Transocean's claims are invalid as anticipated under 35 U.S.C. § 102(a) or obvious under § 103 in light of substantial prior art. In addition, under 35 U.S.C. § 102(f), Transocean derived its purported invention from the Twin Ram Rig and the ME 5500.

### A. The ME 5500

The ME 5500 Dual Rig System was a design for a semisubmersible drilling rig with two drill centers. Drawings of the ME 5500 and methods of operating the rig were created on January 17 and

---

[1] GlobalSantaFe believes it has shown that Transocean has not proffered corroborative evidence of its conception date as a matter of law and has a motion for summary judgment pending. Even if the Court does not grant its motion on that issue, GlobalSantaFe has, at a minimum, produced substantial evidence casting doubt upon Transocean's conception story so that the issue should be heard by a jury.

February 7, 1996. Declaration of Sturla Fjoran ¶ 4 (Ex. 1). Mike Smith, a Houston-based employee of rig broker RS Platou who was located in Houston, and individuals within Maritime Engineering, a Norwegian offshore engineering company, began marketing the ME 5500 in early 1996. *Id.*; Deposition of Mike Smith at 21-22 (Ex. 2). In late January or early February, Mr. Smith had meetings with Transocean inventors Bob Scott and Bob Herrmann about the ME 5500. Deposition of Robert Scott at 65-66 (Ex. 3); *see also* Ex. 4 and Smith Depo. at 28-35 (Ex. 2). This was before the date of conception that Transocean now claims in this case.

The formal ME 5500 Brochure was created on February 8 and includes the earlier created drawings as well as a narrative description of the rig's capabilities. Fjoran Decl. ¶ 4 (Ex. 1). As soon as the brochure was created, Sturla Fjoran of Maritime Engineering began aggressively marketing it to potential customers for a newbuild semisubmersible. *Id.* ¶ 5. Mr. Fjoran gave a copy of the ME 5500 brochure to Smedvig, a Norwegian drilling company, on February 8 or 9, 1996. *Id.* He gave a copy to Transocean ASA on February 21, 1996. *Id.* Global Marine and Sonat (now Plaintiff Transocean) received copies from Fjoran between March 10 and 19, 1996. *Id.* Around this same time Fjoran and Maritime Engineering gave copies to Santa Fe, Diamond Offshore and Saipem. *Id.* As a matter of course, Mike Smith discussed the ME 5500 with other potential customers. Smith Depo. at 55-57 (Ex. 2). Smedvig, Sonat, Transocean, Global Marine, Santa Fe, Diamond, and Saipem were among the few companies in 1996 that would have been interested in building a deepwater offshore rig, which would have required an investment of $200 million dollars or more. Fjoran Decl. ¶ 5 (Ex. 1); Deposition of Donald Ray at 18-19 (Ex. 5). Even today, Transocean's competitors in offshore drilling consist of only a handful of companies. Scott Depo. at 231-32 (Ex. 3).

Transocean had documents related to the ME 5500 in its files.  Ex. 6.  Those documents describe the same two examples of "dual-activity" that are depicted in the ME 5500 brochure. Specifically, the documents state that "[t]he light rig may also be equipped with drilling equipment for drilling of the [top] hole sections complete with installation of the [casing for those sections]." *Id.* at TG 5547.  The literature also describes how the light rig could be used to lower Christmas trees "to enable the X-mas tree to be locked onto the wellhead as soon as the BOP is disconnected." *Id.* at 5548.  In addition to these documents, Transocean admits it had other ME 5500 related documents, but claims that those materials "went missing" in 1996.  Scott Depo. at 61-62 (Ex. 3).

### B.  MH Twin Ram Rig

Offshore drilling is an international business, and Maritime Hydraulics, a Norwegian drilling equipment supplier, was one of only three or four companies in the world that supplied pipehandling equipment for offshore rigs to the drilling industry in the mid-90s.  *Id.* at 45-46.  In December 1995, Maritime Hydraulics began working with Smedvig, a Norwegian drilling contractor and competitor of GlobalSantaFe and Transocean, in designing a new generation offshore drilling rig.  Deposition of Vidar Skjelbred at 13 (Ex. 7); Declaration of Per Vatne (Ex. 8).  By February 20, Maritime Hydraulics had created drawings of a Twin Ram Rig on a floating semisubmersible drilling rig that showed the rig using two drill centers to perform simultaneous operations on a single well.  Ex. 9; Skjelbred Depo at 17-19 (Ex. 7); Vatne Decl. ¶ 9 (Ex. 8).  The drawings also showed that tubulars would be transferred between the two drill centers.  Skjelbred Depo. at 20-26 (Ex. 7); Vatne Decl. ¶ 8 (Ex. 8).  The drawings were given to Smedvig on February 21, 1996.  Skjelbred Depo. at 19-20, 143 (Ex. 7).

On or about March 7, 1996, Bob Scott, one of Transocean's inventors, met with Vidar Skjelbred of Maritime Hydraulics to discuss pipehandling equipment for Transocean's proposed rig with two drill centers. Mr. Skjelbred told Mr. Scott about the MH Twin Ram Rig. *Id.* at 39-40. Although Mr. Scott told Mr. Skjelbred about plans to have two drill centers on Transocean's proposed rig and asked Mr. Skjelbred about pipe-handling equipment for the rig, Scott said nothing to Mr. Skjelbred regarding Transocean's plan to use the rig to work simultaneously on a single well. *Id.* at 44-45; Scott Depo. at 101-02 (Ex. 3); Deposition of Robert Herrmann at 171 (Ex. 10). Thus, there is now no dispute that Transocean did not disclose sufficient information to Maritime Hydraulics to provide Maritime Hydraulics with the basis for its Twin Ram Rig concept.[2]

On March 19, 1996, Mr. Skjelbred faxed to Mr. Scott drawings of the Twin Ram Rig that included drawings showing a method of using the two well centers to work simultaneously on a single well. Scott Depo. at 149 (Ex.3); Ex. 11. Specifically, the drawings show running casing (or conductor) from one drill center while drilling from the other. Ex. 11 at TG 2663 and TG 2666. The drawings faxed to Mr. Scott had been previously created by Maritime Hydraulics for Smedvig. Skjelbred Depo. at 48-49 (Ex. 7). Mr. Scott appreciated the significance of these documents and sent them to Transocean's patent attorney by March 21, 1996. Ex. 12.

A similar group of drawings was faxed by Maritime Hydraulics to GVA, a Swedish rig designer, on March 12, 1996. Vatne Decl. ¶ 6 (Ex. 9) and attached Ex. B. A Twin Ram Rig was incorporated into a GVA design by the end of April 1996. Ex. 13 at GSF 128619.

---

[2] Claiming that Maritime Hydraulics derived its design from Transocean is one of the misrepresentations that Transocean made to the patent examiner to persuade him to withdraw a rejection of some of Transocean's patent claims. *See* GlobalSantaFe's Response to Transocean's Motion for Partial Summary Judgment of Enforceability of the Transocean Patents at 14-16 (filed concurrently with this motion).

Contrary to Transocean's arguments, there was no confidentiality agreement that prohibited Maritime Hydraulics from marketing the Twin Ram Rig prior to May 3, 1996. In fact, in an agreement signed by Maritime Hydraulics on April 24, 1996, Maritime Hydraulics reserved the right "to promote the Twin RamRig concept or any item or equipment associated to this, to any third party." Declaration of Rolf Mathiesen ¶ 3 (Ex. 14) and attached Ex. A. Maritime Hydraulics included the Twin Ram Rig in a brochure distributed at the Offshore Technology Conference in Houston in May 1996. *See* Ex. 15 (Transocean notes regarding OTC brochure and attached brochure).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-27 (1986); *Riley & Ephriam Const. Co., Inc. v. U.S.* 408 F.3d 1369, 1371 (Fed. Cir. 2005). All justifiable inferences should be drawn in favor of GlobalSantaFe, the non-movant. *Riley*, 408 F.3d at 1370-71.

## III. ARGUMENT

### A. The MH Twin Ram Rig and ME 5500 Were Printed Publications and Were Publicly Known Before Transocean's Conception

#### 1. A Document Need Only Be Available to "the Interested Public"

To be a printed publication, a document does not need to be distributed to a large number of entities in the public at large, but rather "need only be accessible to the interested public." *Cooper*

*Cameron Corporation v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1324 (Fed. Cir. 2002). Printed publications include those published in a foreign country. *See* 35 U.S.C. § 102(a).

In *Cooper Cameron*, the reports at issue had been distributed to only six individuals between late 1990 and June 1992. The defendant submitted affidavits stating that those reports were not considered confidential and were distributed to interested parties, including outside contractors. *Id.* at 1323. The Federal Circuit ruled that the district court erred in granting summary judgment that the four reports were not "printed publications" because the defendant had raised a genuine issue of material fact that the reports were "sufficiently available to the public interested in the art" at least before the application dates of the patents (June 1,1992), if not the critical date under § 102 (a) (June 1, 1991). *Id.*

Similarly, in *Crane Co. v. Goodyear Tire & Rubber Co.*, 577 F. Supp. 186, 196 (N.D. Ohio 1983), certain technical proposals and diagrams were printed publications where they were sent by the defendant to its three major customers, the industry leaders, because "[d]istribution of a limited number of copies of a printed document to an interested segment of the public is sufficient to constitute a publication barring a patent . . . ." *Id.* at 197. *See also Massachusetts Institute of Technology v. AB Fortia,* 774 F.2d 1104, 1109 (Fed. Cir. 1985) (document distributed to at least six persons was prior art); *Vetco Offshore Industries, Inc. v. Rucker Company*, 448 F. Supp. 1203, 1208 (N.D. Cal. 1978) ("Although the number of recipients of the information was not large in absolute terms, it represented the major part of the class of persons concerned with the particular art and thus most likely to avail themselves of the information.").

### 2.     The Presence of Confidentiality Language is not Determinative

The mere presence of a statement regarding confidentiality does not change the prior art status of a document if it was otherwise reasonably available. In *Cooper Cameron*, the presence of a "confidential" label on one page within one report did not remove it as an available prior art reference. 291 F.3d at 1324. Similarly, in *Crane*, the fact that some of the materials were labeled "restricted" or "confidential" did not affect its status as prior art. "[T]he mere words 'restricted' or 'confidential' on a document is of no consequence where [the creator] intended to and actually did distribute the documents to its major commercial customers who comprise the interested population in the United States." 577 F. Supp. at 197.

### 3.     The Twin Ram Rig Drawings Were Not Confidential and Were Available to Interested Drilling Contractors

The Twin Ram Rig drawings were distributed to Transocean (on March 19, 1996) and Smedvig (by February 21, 1996), two of the major competitors in the offshore drilling industry. Skjelbred Depo. at 19-20, 143 (Ex. 7). The fax cover sheet to inventor Bob Scott from Maritime Hydraulics says nothing about confidentiality of the documents. Ex. 11. Moreover, several of the Twin Ram Rig drawings have no language regarding confidentiality, *id.* at TG 2655-58, and on the drawings that do have such language, the writing is so small as to be completely illegible. *Id.* at TG 2659-66.

The same drawings were sent by Maritime Hydraulics to GVA on March 12, 1996 without any sort of confidentiality notice (Ex. 9 and Ex. B thereto) and the Twin Ram Rig was incorporated by GVA into one of its designs by April 1996. Ex. 13 at GSF 128619. Maritime Hydraulics further disclosed the Twin Ram Rig in its Offshore Technology Conference brochure in May 1996. (Ex.15).

Because there is substantial evidence that the drawings in the MH Twin Ram Rig brochure were sufficiently accessible to the interested public prior to May 3, 1996 and as early as February 22, 1996, Transocean's motion for summary judgment that the MH Twin Ram Rig brochure was not publicly known and was not a printed publication under 35 U.S.C. § 102(a) must fail.

### 4. The ME 5500 Was Not Confidential and Was Available to Interested Drilling Contractors

Likewise, the ME 5500 brochure was accessible to the interested public by late January or early February 1996. Inventors Herrmann and Scott had regular contact with Mike Smith and knew about the ME 5500 rig in late January or early February 1996. Scott Depo. at 65-66 (Ex. 3); *see also* Ex. 4 and Smith Depo. at 28-35 (Ex. 2). Mr. Smith would have marketed the design to others as a matter of course. Smith Depo. at 55-57 (Ex. 2). Transocean has documents related to the ME 5500 rig in its files. Ex. 6. The ME 5500 brochure was given to Smedvig on February 8 or 9, 1996, to Transocean on February 21, 1996, to Sonat and Global Marine between March 10 and March 19, 1996, and to other interested drilling contractors around the same time. Fjoran Decl. ¶ 5 (Ex. 1). Thus, it was accessible to the interested public – offshore drilling contractors – well before Transocean's application date of May 3, 1996, if not as early as February 8, 1996, the date the brochure was completed. Transocean's motion for summary judgment that the ME 5500 was not publicly known and was not a printed publication under 35 U.S.C. § 102 (a) must fail.

### B. Transocean Had Actual Knowledge of MH Twin Ram Rig and ME 5500, Making Them Prior Art for Derivation and Obviousness Purposes

Transocean ignores its own knowledge of the MH Twin Ram Rig and ME 5500 in arguing that they are not prior art. However, because the inventors had actual knowledge of both designs

prior to their conception, they are, at a minimum, prior art to Transocean under 35 U.S.C. §§ 102(f) and 103.

Information that is available to an inventor prior to his conception of a patented invention is prior art to show derivation under section 102(f) or obviousness under section 103. *See Oddzon Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1401-04 (Fed. Cir. 1997) (holding that a confidential design which "inspired" the inventor of the patented invention was prior art under sections 102(f) and 103). Moreover, for obviousness, a reference may be prior art to an inventor if he admits to actual knowledge of the reference. *See Riverwood Int'l Corp v. R.A. Jones & Co., Inc.*, 324 F.3d 1346, 1354 (Fed. Cir. 2003) ("[S]ection 102 is not the only source of section 103 prior art. Valid prior art may be created by the admissions of the parties."); *see also In re Fout*, 675 F.2d 297, 300-01 (C.C.P.A. 1982) (holding that inventor's admission that they had "actual knowledge" of the prior invention "constitutes an admission that it is prior art to them").

Transocean has admitted that it had actual knowledge of the MH Twin Ram Rig and the ME 5500 long before its application date. Inventor Bob Scott has admitted that he received Maritime Hydraulics' drawings of the Twin Ram Rig on March 19, 1996. Scott Depo. at 149 (Ex. 3); Ex. 11. Inventors Scott and Herrmann have admitted that they knew about the ME 5500 and its capabilities in late January or early February of 1996.[3] Herrmann Depo. at 61-64 (Ex. 10); Scott Depo. at 65-66 (Ex. 3). Don Ray has notes regarding the ME 5500 from February 19, 1996. (Ex.16).

Transocean's conception date is presumed to be its May 3, 1996 filing date and it has not and cannot prove its earlier claimed conception date as a matter of law. Transocean's inventors have

---

[3] For this reason alone, Transocean's motion with respect to the ME 5500 should fail, regardless of Transocean's conception date.

admitted actual knowledge of the ME 5500 by late January or Early February. They have admitted actual knowledge of the MH Twin Ram Rig no later than March 19, 1996. Thus, both references are, at a minimum, prior art as to Transocean under 35 U.S.C. §§ 102(f) and 103.

## IV. CONCLUSION

The Maritime Hydraulics Twin Ram Rig and the ME 5500 were both designed before Transocean's alleged invention. Both designs disclose a rig with two drill centers working simultaneously on a single well, and both designs were communicated to the inventors months before Transocean filed its patent application. There is substantial evidence that the Twin Ram Rig brochure and ME 5500 brochure were available to the interested public prior to Transocean's conception of the asserted claims. It is also undisputed that the inventors had actual knowledge of the Twin Ram Rig and ME 5500 prior to that time. Accordingly, Transocean cannot carry its burden and its motion must be denied.

Dated: May 25, 2006                                    Respectfully submitted,

                                              By:    /s/ William C. Slusser
                                                     William C. Slusser
                                                     SLUSSER WILSON & PARTRIDGE LLP
                                                     Texas Bar No. 18514500
                                                     Federal I.D. NO. 1068
                                                     333 Clay Street, Suite 4720
                                                     Houston, Texas  77002
                                                     Telephone: (713) 860-3300
                                                     Facsimile: (713) 860-3333

OF COUNSEL:
Jayme Partridge                                      Attorney in Charge for
Texas Bar No. 17132060                               GlobalSantaFe Defendants
Keith Jaasma
Texas Bar No. 00794014
Michael Locklar
Texas Bar No. 24010194
SLUSSER WILSON & PARTRIDGE LLP

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that the foregoing GlobalSantaFe's Opposition to Transocean's Motion for Partial Summary Judgment on Prior Art was served by the court's electronic service on this the 25th day of May 2006 as follows:

>Charles Walker
>Fulbright & Jaworski LLP
>1301 McKinney, Suite 5100
>Houston, Texas 77010

>/s/ William C. Slusser

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSOCEAN OFFSHORE<br>DEEPWATER DRILLING INC. | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| vs. | §<br>§ | C.A. NO. H-03-2910 |
| GLOBALSANTAFE CORPORATION,<br>GLOBAL MARINE, INC.<br>GLOBALSANTAFE DRILLING<br>COMPANY, GLOBAL MARINE<br>DRILLING COMPANY | §<br>§<br>§<br>§<br>§<br>§ | **JURY TRIAL DEMANDED** |
| Defendants. | § | |

## **PROPOSED ORDER**

The Court has considered Plaintiff Transocean's Motion for Partial Summary Judgment on Prior Art, the attached exhibits, and all responses, and is of the opinion that the motion should be DENIED.

DATED this _____ day of _____, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

00007347 / 3                                          1