IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-03-2910 |
| GLOBALSANTAFE CORP., GLOBAL MARINE, INC., GLOBAL SANTA FE DRILLING CO., GLOBAL MARINE DRILLING CO., | § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is GlobalSantaFe's Motion for Judgment as a Matter of Law (JMOL) on Failure to Give Patent Notice (Docket Entry No. 179), and Transocean's Motion for Prejudgment Interest (Docket Entry No. 226). For the reasons explained below, GlobalSantaFe's motion will be granted and Transocean's motion will be granted in part and denied in part.

**I. Background**

Plaintiff, Transocean Offshore Deepwater Drilling, Inc. (Transocean), brought this action against defendants, GlobalSantaFe Corp., Global Marine, Inc., Global Santa Fe Drilling Co., and Global Marine Drilling Co. (collectively, "GSF"), for infringement

of patents to which it is the exclusive licensee.  By Memorandum and Opinion filed on November 29, 2005 (Docket Entry No. 84), the court granted Transocean's motion for summary judgment that GSF's Development Driller I and II rigs infringe Transocean's apparatus claims.  At the conclusion of an eight-day trial the jury was asked "[w]hat reasonable royalty has Transocean proven by a preponderance of the evidence that it is entitled to recover on GlobalSantaFe's revenue from the Development Drillers I and II?"[1]  The jury answered:  an "[u]pfront royalty for the Development Drillers I and II" of $829,500,[2] and a "[r]unning royalty rate to be applied to the daily revenue for the Development Drillers I and II" of 5 percent.[3]

## II.  GlobalSantaFe's Motion for Judgment as a Matter of Law

Citing Dunlap v. Schofield, 14 S.Ct. 576 (1894), GSF asserts that Transocean had the burden of proving compliance with the patent marking statute, 35 U.S.C. § 287(a), but that Transocean failed to present any evidence at trial that it marked its drilling assemblies with patent numbers or that it provided GSF pre-suit notice of infringement.  Pursuant to Federal Rule of Civil Procedure 50(a) GSF seeks JMOL on Transocean's failure to give patent notice, and argues that "[a]s a result, Transocean may not

---

[1] Verdict Form (Docket Entry No. 208), p. 1.

[2] Id.

[3] Id. at p. 2.

recover damages incurred before this lawsuit was filed on July 28, 2003."[4]  Rule 50(a)(1) provides that

> [i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Transocean does not dispute that it failed either to mark its drilling assemblies or to give pre-suit notice of infringement to GSF.  Instead, Transocean argues that it "presented undisputed evidence at trial establishing that all of the damages it seeks -- and which the jury awarded in its verdict -- are damages for GlobalSantaFe's infringement that occurred **after** this infringement action was filed on July 28, 2003."[5]  Transocean argues that its damages are based "on GlobalSantaFe's contracts with BP and BHP that were both signed after this action was filed."[6] Alternatively, Transocean argues that GlobalSantaFe waived its challenge to the damage award by failing to offer a jury instruction or question that identified how much, if any, of the awarded damages accrued before the lawsuit was filed.

---

[4]GlobalSantaFe's Motion for Judgment as a Matter of Law on Transocean's Failure to Give Patent Notice, Docket Entry No. 179, p. 1.

[5]Plaintiff's Response to Defendants' Motion for Judgment as a Matter of Law on Transocean's Failure to Give Patent Notice, Docket Entry No. 212, p. 2.

[6]Id. at p. 3.

-3-

**A.     Applicable Law**

    1.     Patent Marking Statute

The patent marking statute limits recovery for patent infringement to damages that accrue after a patent owner marks its products or provides actual notice of infringement to defendant. 35 U.S.C. § 287(a).  See also American Medical Systems, Inc. v. Medical Engineering Corp., 6 F.3d 1523, 1537 (Fed. Cir. 1993), cert. denied, 114 S.Ct. 1647 (1994) ("[Plaintiff] is entitled to damages from the time when it either began marking its products in compliance with section 287(a) or when it actually notified [defendant] of its infringement, whichever is earlier.").

> For purposes of section 287(a), notice must be of "the infringement," not merely notice of the patent's existence or ownership.
>
> Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device. . . . It is irrelevant . . . whether the defendant knew of the patent or knew of his own infringement.  The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer.

Amsted Industries, Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 187 (Fed. Cir. 1994).  "Filing of an action for infringement shall constitute . . . notice" required by § 287(a).  35 U.S.C. § 287(a). Transocean had the burden of proving compliance with the patent marking statute.  See Dunlap, 14 S.Ct. at 577.  See also Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed. Cir.), cert. denied, 117 S.Ct. 1244 (1997) (patentee had the burden of pleading and proving compliance with the statutory requirements of marking).

-4-

2. <u>Reasonable Royalty</u>

When actual damages cannot be adequately proved in a patent infringement suit, a reasonable royalty may be employed. <u>See</u> <u>Wang Laboratories, Inc. v. Toshiba Corp.</u>, 993 F.2d 858, 870 (Fed. Cir. 1993) (citing <u>Fromson v. Western Litho Plate & Supply Co.</u>, 853 F.2d 1568, 1574 (Fed. Cir. 1988), <u>cert. denied</u>, 111 S.Ct. 1109 (1991), <u>overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.</u>, 383 F.3d 1337, 1343-1344 (Fed. Cir. 2004) (en banc)). "A reasonable royalty is the amount that 'a person, desiring to manufacture [, use, or] sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make [, use, or] sell the patented article, in the market, at a reasonable profit.'" <u>Wang</u>, 993 F.2d at 870 (quoting <u>Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.</u>, 750 F.2d 1552, 1568 (Fed. Cir. 1984)). Absent an established royalty, a reasonable royalty may be determined based on "hypothetical negotiations between willing licensor and willing licensee." <u>Id.</u> (quoting <u>Fromson</u>, 853 F.2d at 1575).

> [R]easonable royalty damages are not calculated in a vacuum without consideration of the infringement being redressed. [Courts] are required to identify the infringement requiring compensation, and evaluate damages based on a hypothetical negotiation at the time that infringement began.

<u>Applied Medical Resources Corp. v. U.S. Surgical Corp.</u>, 435 F.3d 1356, 1361 (Fed. Cir. 2006).

**B.   Analysis**

Although Transocean acknowledges that the first act of infringement by GSF "took place before the lawsuit . . . [when GSF] offered the Development Drillers to BP on the Atlantis Project,"[7] and that this occurred on June 4, 2003,[8] almost two months before suit was filed, Transocean argues that this act of infringement "did not accrue or affect damages."[9]  Asserting that GSF signed contracts for its infringing rigs in December of 2003 (with BP), and in September of 2004 (with BHP), Transocean argues that its damage expert, James Nawrocki, "calculated the up-front royalty not at the time of the hypothetical negotiation, but on the press releases 'when they [i.e., GSF] obtained these contracts with BP and BHP.'"[10]  Since both contracts for GSF's Development Driller rigs were entered after this lawsuit was filed, Transocean argues that it is entitled to recover the damages awarded by the jury because all of the damages accrued after GSF had actual notice of infringement from the filing of this action.  The court is not persuaded by Transocean's arguments.

---

[7]Plaintiff's Response to Defendants' Motion for Judgment as a Matter of Law on Transocean's Failure to Give Patent Notice, Docket Entry No. 212, p. 4.

[8]Id. at p. 3 n.1.

[9]Id.

[10]Id.  See also Declaration of James Nawrocki, Exhibit A attached to Transocean's Motion for Prejudgment Interest, Docket Entry No. 226, p. 6 n.3 (stating that GSF's contract with BP was signed in December of 2003, and GSF's contract with BHP was signed in September of 2004).

This issue is governed by the rule discussed in Wang and established in Fromson, by which hypothetical negotiations are determined to have occurred when the infringement began, which in this case was the date that GSF offered the Development Driller rigs for sale, i.e., June of 2003, even though under 35 U.S.C. § 287(a) Transocean's failure to mark the patented drilling assemblies imposes a limitation on recovery of damages in the absence of notice.  As stated in Wang, "[t]he key element in setting a reasonable royalty . . . is the necessity for return to the date when the infringement began."  Id.  Although Transocean recognizes this principle of law by stating that

> the Court should look to the date infringement began to establish the reasonable royalty rate under the hypothetical negotiation approach, and then disallow damages that accrued between the hypothetical negotiation date and the date of notice of infringement or marking,[11]

without citing any authority Transocean argues that the only act of infringement that took place before the lawsuit

> did not accrue or affect damages.  Before this lawsuit, GlobalSantaFe offered the Development Drillers to BP on the Atlantis Project. . . However, expert Nawrocki never assigned damages to this act.  Instead [he] based the up-front royalty on the value of the contract when signed in December 2003. . . The up-front royalty was determined and therefore due when GlobalSantaFe committed the second act of infringement -- actually selling or contracting the Development Drillers.  The running royalty was based on and due when GlobalSantaFe received revenue for the use of the rigs -- the third and continuing act of infringement.

---

[11] Id. at p. 4.

> Consequently, even if this Court concludes that Transocean did not mark its drilling rigs or otherwise provide GlobalSantaFe with pre-suit notice that it infringed the asserted claims, any such ruling **will not** impact the jury's award of damages in any way whatsoever.[12]

Transocean's argument that the damages awarded by the jury all accrued after this action was filed is belied by Nawrocki's expert report and trial testimony, and by the instructions given to the jury.

Transocean's expert, Nawrocki, stated in his report that

> based on various licensing, financial and technical considerations discussed throughout this report, my opinion is that a reasonable royalty would include **an up-front payment made for each offer for sale of the technology at issue.** This up-front payment would range from 1% to 2% of the estimated contract values for offers made by GlobalSantaFe that are found to be infringing.[13]

Although Transocean cites a single sentence of Nawrocki's trial testimony in support of its argument that the up-front royalty accrued at the time the contracts were signed, when read in context, the single sentence does not support Transocean's argument but, instead, supports GSF's argument that the up-front royalty accrued when GSF offered the Development Drillers for sale.

> Q.  . . . Why have you calculated an up-front royalty itself?  What is the purpose for that?

---

[12] Id. at pp. 4-5.

[13] See Expert Report of James J. Nawrocki, DTX 332, attached to GSF's Reply to Motion for Judgment as a Matter of Law on Transocean's Failure to Give Patent Notice, Docket Entry No. 214, p. 22 (emphasis added).

> A. Well, one thing that happened is, **by GlobalSantaFe competing and offering these rigs for sale -- whether or not they receive actual revenues or not, by them offering it for sale, they cause an impact in the marketplace.**
>
> There's been some testimony in terms of them wanting to come into the deep-water area. . . .
>
> **By offering a rig for sale, they become, in essence, a player in that marketplace.** When they actually start using the rig and selling the rig, they're even more of a player.
>
> **But just having a rig that they're offering and getting a contract on them, that at least puts them in that space, if you will, and that certainly is an impact and I think in order th have that ability it would be fair to calculate an up-front payment.**[14]

The slide that Transocean showed to the jury during Nawrocki's testimony stated that the up-front payment that Transocean sought as an element of its damages was intended to compensate Transocean for a sum that would have been "[p]aid by GlobalSantaFe **at the time the technology was offered**."[15]

The instructions given to the jury reiterated Nawrocki's testimony that the damages Transocean sought were to be calculated from just before the date that GSF first offered its dual activity drilling rig for lease in June of 2003.

---

[14]Plaintiff's Response to Defendants' Motion for Judgment as a Matter of law on Transocean's Failure to Give Patent Notice, Docket Entry No. 212, p. 4, citing Nawrocki Testimony, Tr. 717:7-25, Exhibit D attached thereto (emphasis added).

[15]See Exhibit 4 attached to GSF's Reply to Motion for Judgment as a Matter of Law on Transocean's Failure to Give Patent Notice, Docket Entry No. 214 (emphasis added).

> Transocean is asking for damages in the amount of a reasonable royalty. A royalty is an amount of money that someone pays a patent owner to be able to use the patent invention.
>
> A reasonable royalty is the royalty that would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both knew is valid and that the infringer wants to use.
>
> **You are to decide what a reasonable royalty would be, based on circumstances as of the time just before GlobalSantaFe first offered its dual activity drilling rig for lease in June 2003.** You should assume that GlobalSantaFe and Transocean knew at that time such things as the level of sales and profits that GlobalSantaFe would make using the invention. You should also assume that Transocean was willing to grant GlobalSantaFe a license to use the patented invention and that GlobalSantaFe was willing to pay for that license.[16]

Since both Nawrocki's expert report and his trial testimony demonstrate that the up-front payment that Transocean sought as an element of its damages for GSF's infringement was intended to compensate Transocean for GSF's offer of its infringing Development Driller rigs for sale and/or lease, the court is not persuaded that the up-front royalty payment did not accrue until GSF entered contracts with BP and BHP, as now argued by Transocean. Instead, the court concludes that the royalty payment accrued when GSF offered the Development Driller rigs to the marketplace as argued by GSF. Since Transocean failed to present any evidence showing that it marked its drilling assemblies or that it provided pre-suit notice of infringement to GSF, and since Transocean bears the burden of proving entitlement to any damages that may have accrued

---

[16]Court's Instructions to the Jury, Docket Entry No. 206, p. 8 (emphasis added).

before suit was filed, the court is not persuaded that GSF waived its ability to challenge Transocean's entitlement to pre-suit damages by failing to request a specific jury question on this issue. Accordingly, the court concludes that GSF's motion for JMOL should be granted.

### III.   Transocean's Motion for Prejudgment Interest

Transocean asks the court to award prejudgment interest on the damages caused by GlobalSantaFe's infringement. Asserting that "[p]rejudgment interest is intended to place a patent holder in as good a position as it would have been in without the infringement,"[17] Transocean argues that "[t]he [p]rime rate or a higher interest rate, is particularly appropriate in this case because it is consistent with the trial record."[18] Transocean also seeks monthly compounding of prejudgment interest.[19] Citing Laitram Corp. v. NEC Corp., 115 F.3d 947, 955 (Fed. Cir. 1997), GSF argues that an award of prejudgment interest at the treasury bill rate, compounded annually, will adequately compensate Transocean.[20]

"[P]rejudgment interest serves to make the patent owner whole, for damages properly include the foregone use of money of which the

---

[17]Transocean's Motion for Prejudgment Interest, Docket Entry No. 226, p. 1.

[18]Id. at p. 3.

[19]Id.

[20]GlobalSantaFe's Response to Transocean's Motion for Prejudgment Interest, Docket Entry No. 231, p. 3.

patentee was wrongly deprived." Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1574 (Fed. Cir. 1996). In General Motors Corp. v. Devex Corp., 103 S.Ct. 2058, 2063 (1983), the Supreme Court held that "prejudgment interest should ordinarily be awarded absent some justification for withholding such an award, [and that] a decision to award prejudgment interest will only be set aside if it constitutes an abuse of discretion." Id. The rate of the prejudgment interest and whether interest should be compounded are left to the court's discretion. See Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 557 (Fed. Cir. 1984). In Laitram, 115 F.3d at 955, the court found that interest awarded at the treasury bill rate is appropriate in patent cases, absent evidence that justifies a higher rate.

In an attempt to justify an award of prejudgment interest at the prime rate or higher, Transocean argues that GSF's "10-K filing with the S.E.C. showed it had an outstanding debt with interest rates ranging from 6.625 to 8.0 percent,"[21] that "Transocean's Internal Rate of Return ("IRR") for its dual activity rigs ranges from 11 to 15.7 percent,"[22] and that Transocean's contracts provide for a 12-percent late payment interest rate.[23] Since Transocean fails to demonstrate that these interest rates or rates of return

---

[21]Transocean's Motion for Prejudgment Interest, Docket Entry No. 226, p. 3.

[22]Id.

[23]Transocean's Reply in Support of Its Motion for Prejudgment Interest, Docket Entry No. 234, pp. 4-6.

are necessary to fully compensate it for GSF's infringement, the court is not persuaded that prejudgment interest should be awarded at any of these rates.

Because the Supreme Court has held that prejudgment interest should ordinarily be awarded absent some justification for withholding such an award, the court concludes that Transocean should receive prejudgment interest on the jury's running royalty award.  Because Transocean has failed to demonstrate that the prime rate or a higher rate is necessary to fully compensate it for GSF's infringement, the court concludes that the prejudgment interest should be based on the three-month United States Treasury Bill rate, compounded quarterly, the risk free rate that Transocean could have received if it had invested the running royalties from the time that they would have been received in November of 2005.[24]  See Gyromat, 735 F.2d at 557 ("An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment.").

---

[24]See Declaration of James Nawrocki, Exhibit A attached to Transocean's Motion for Prejudgment Interest, Docket Entry No. 226, p. 6 n.3 (identifying the running royalty period as beginning in November of 2005 and ending in Augusut of 2006).

## IV.  Conclusions and Order

For the reasons explained above, GlobalSantaFe's Motion for Judgment as a Matter of Law on Failure to Give Patent Notice (Docket Entry No. 179) is **GRANTED**, and Transocean's Motion for Prejudgment Interest (Docket Entry No. 226) is **GRANTED IN PART** and **DENIED IN PART.**  The parties will submit to the court by November 28, 2006, an agreed statement as to the amount of interest due as of December 1, 2006, under the court's ruling and the daily interest due thereafter.

**SIGNED** at Houston, Texas, on this 6th day of November, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE