IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TRANSOCEAN OFFSHORE                §
DEEPWATER DRILLING, INC.,          §
                                   §
            Plaintiff,             §
                                   §
v.                                 §    CIVIL ACTION NO. H-03-2910
                                   §
GLOBALSANTAFE CORP.,               §
GLOBAL MARINE, INC.,               §
GLOBAL SANTA FE DRILLING CO.,      §
GLOBAL MARINE DRILLING CO.,        §
                                   §
            Defendants.            §


**MEMORANDUM OPINION AND ORDER**

Pending before the court is Transocean's Motion for Permanent Injunction (Docket Entry No. 228), and GlobalSantaFe's ("GSF") Cross-Motion for Stay of Any Injunction Pending Appeal (Docket Entry No. 232).  For the reasons explained below Transocean's motion will be granted as modified by the parties' agreement as to the form of the language ordering the structural modification to the Development Driller I and II,[1] and GSF's motion will be denied.


**I. Background**

Transocean brought this action against GSF for infringement of numerous apparatus and method claims of four patents to which it is

---

[1]See Plaintiff Transocean's Partially Unopposed Amended Motion for Entry of Judgment, Docket Entry No. 255, pp. 5-6.

the exclusive licensee.   By Memorandum and Opinion entered on November 29, 2005 (Docket Entry No. 84), the court granted in part and denied in part Transocean's motion for summary judgment, finding that GSF's Development Driller I and II deep water oil rigs infringe the apparatus claims but not the method claims of the patents-in-suit.  Following an eight-day trial at which only two of the numerous claims originally asserted remained at issue, the jury rejected all of GSF's affirmative defenses, i.e., that the patents-in-suit are invalid in light of the prior art, and that Transocean engaged in inequitable conduct to gain the patents-in-suit.[2]

## II. **Transocean's Motion for Permanent Injunction**

Asserting that "[t]he [c]ourt determined by summary judgment that the Development Drillers I and II infringed the Transocean patents through the offer for sale, sale, and import of the rigs,"[3] Transocean asks the court to enter a permanent injunction prohibiting [GSF] "from making, using, selling, offering to sell or importing the Development Drillers I and II, or any drilling rigs not more than colorably different, in the United States for the term of the Transocean patents."[4]

Asserting that the injunction Transocean seeks is overly broad, GSF argues that the injunction should be limited to prohibit only actual operations on one well by the Development Drillers.

_____

[2]See Verdict Form, Docket Entry No. 208.

[3]Transocean's Motion for Permanent Injunction, Docket Entry No. 228, p. 14.

[4]_Id._ at p. 1.

"[I]f the [c]ourt determines that an injunction is warranted and the scope of the injunction would require the Development Drillers to be shut down or to be structurally modified, then GlobalSantaFe requests that the [c]ourt stay the injunction pending appeal."[5]

## A.   Applicable Law

1.   Patent Act

The Patent Act provides that "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."   35 U.S.C. § 283.   In eBay Inc. v. MercExchange, L.L.C., 126 S.Ct. 1837, 1839 (2006), the Supreme Court held that equitable injunction standards apply to cases brought under the Patent Act.   The Supreme Court explained that

> [a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Id.   The Supreme Court's decision in eBay struck down the Federal Circuit's longstanding rule that "courts will issue permanent

---

[5]GSF's Response to Transocean's Motion for Permanent Injunction and Cross-Motion for Stay of Any Injunction Pending Appeal, Docket Entry No. 232, p. 2.

injunctions against patent infringement absent exceptional circumstances[.]" <u>Monsanto Co. v. Scruggs</u>, 459 F.3d 1328, 1342 (Fed.Cir. 2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion." <u>eBay</u>, 126 S.Ct. at 1839.

    2.   <u>Form and Scope of a Permanent Injunction</u>

The form and scope of a permanent injunction is governed by Federal Rule of Civil Procedure 65(d), which provides that

> [e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

"In accord with the policy of Rule 65(d), the Supreme Court has denounced broad injunctions that merely instruct the enjoined party not to violate a statute[, . . . because s]uch injunctions increase the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful." <u>International Rectifier Corp. v. IXYS Corp.</u>, 383 F.3d 1312, 1316 (Fed.Cir. 2004) (citing <u>NLRB v. Express Publishing Co.</u>, 61 S.Ct. 693 (1941)). The Federal Circuit has vacated as overly broad injunctions that "failed to state which acts constituted infringement or to expressly limit [their] prohibition to the

manufacture, use, or sale of the specific device found to infringe, or devices no more than colorably different from the infringing device." Id.  Thus "the only acts the injunction may prohibit are infringement of the patent by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated devices." Id. See also Riles v. Shell Exploration and Production Co., 298 F.3d 1302, 1311 (Fed.Cir. 2002)("an injunction cannot impose unnecessary restraints on lawful activity").

The Federal Circuit explained the "no more than colorably different" standard in KSM Fastening Systems, Inc. v. H.A. Jones Co., Inc., 776 F.2d 1522 (Fed.Cir. 1985).  Specifically,

> [w]here the alteration in the device is "merely colorable" and obviously was made for the purpose of evading the decree without essential change in the nature of the device, the courts will try the question of infringement by the new device in proceedings for contempt for violation of the injunction. But where infringement by the new device is not clear on the face of the matter, and there are substantial issues for the determination of the court, the plaintiff may not have them determined in contempt proceedings, but must bring a supplemental bill for an injunction covering the new device, or institute a wholly new suit for such an injunction.

Id. at 1531.  Under this standard an infringer who has made a good-faith effort to modify an infringing device should not be punished by contempt charges based on a permanent injunction.  See Arbek Mfg., Inc. v. Moazzam, 55 F.3d 1567, 1570 (Fed.Cir. 1995).

**B.   Analysis**

Transocean argues that the equities weigh in favor of a permanent injunction.  GSF responds that the equities weigh against a permanent injunction.  If the court determines that an injunction is warranted and the scope of the injunction would require structural modification of the Development Drillers, GSF seeks a stay pending appeal.[6]   Transocean argues that a stay is not warranted.

1.   <u>Equitable Factors</u>

Plaintiffs seeking a permanent injunction must demonstrate (1) irreparable injury, (2) inadequacy of legal remedies (i.e., monetary damages), (3) hardship, and (4) no disservice to the public interest.  <u>eBay</u>, 126 S.Ct. at 1839.

(a) Irreparable Injury

Transocean argues that the court should enjoin GSF "because it causes irreparable harm by using the patented invention in direct competition with Transocean."[7]   Transocean also argues that continued infringement will deprive it of

> its right to exclude others, [and will] encourage[] others to infringe, interfere[] with Transocean's ability to control use and licensing of the technology . . . erode[] Transocean's market share . . . cause[]

---

[6]<u>Id.</u> at p. 2.

[7]Plaintiff Transocean's Reply in Support of Its Motion for Permanent Injunction, Docket Entry No. 236, p. 1.

> substantial lost profits not covered by a royalty, and
> allow [GSF] to benefit from the good will in the
> invention created by Transocean's marketing and proving
> the technology works.[8]

GSF argues that Transocean is unable to show irreparable harm because Transocean "gives no detail regarding any specific harm in the deepwater drilling market,"[9] and because GSF is not using Transocean's technology to influence common customers.[10]    As evidence that it is not influencing common customers with Transocean's patented invention, GSF cites testimony from representatives of BP and BHP that the dual activity feature claimed in Transocean's patents is not what drives the market and was not the reason that BP and BHP leased the Development Driller rigs from GSF.[11]  Quoting Justice Kennedy's concurrence in eBay, 126 S.Ct. at 1842, GSF also argues that the existence of the "right to exclude alone is not sufficient to support a finding of injunctive relief."[12]

In eBay Justice Kennedy acknowledged that "the existence of a right to exclude does not dictate the remedy for a violation of

---

[8]Transocean's Motion for Permanent Injunction, Docket Entry No. 228, p. 5.

[9]GSF's Response to Plaintiff Transocean's Motion for Permanent Injunction and Cross-Motion for Stay of Any Injunction Pending Appeal, Docket Entry No. 232, p. 11.

[10]Id. at pp. 14-16.

[11]Id.

[12]Id. at p. 12.

that right." 126 S.Ct. at 1842 (Kennedy, J., concurring).  However,
Justice Kennedy recognized that "[t]o the extent earlier cases
establish a pattern of granting an injunction against patent
infringers almost as a matter of course, this pattern simply
illustrates the result of the four-factor test in the contexts then
prevalent."  Id.  Since a patent grants the right to exclude others
from practicing the invention, 35 U.S.C. § 154, the right to
exclude remains a relevant issue for courts to consider when
weighing the equities for and against an application for permanent
injunction.  Although GSF argues that it is not using Transocean's
invention to influence common customers, GSF admits that
"Transocean and GlobalSantaFe have the same customers in the
deepwater rig market."[13]  GSF has not cited any case in which a
continuing infringer in direct competition with a patent holder has
not been permanently enjoined from using the patented invention to
compete against the patent holder.  Instead, GSF has cited two
post-eBay cases in which courts denied requests for permanent
injunctions from patent holders that had neither made nor marketed
their inventions.  See Paice LLC v. Toyota Motor Corp., 2006 WL
2385139 (E.D. Tex. August 16, 2006) (denying permanent injunction
to plaintiff who attempted to license hybrid car invention instead
of marketing and selling invention); and z4 Tech., Inc. v.
Microsoft Corp., 434 F.Supp.2d 437 (E.D.Tex. 2006) (denying

_____

[13]Id. at p. 14.

permanent injunction to plaintiff that failed to commercialize its software invention).

In this case it is undisputed that the structure on the Development Driller rigs that the court found to infringe the apparatus claims of Transocean's patents were developed for the new deep water drilling market, that Transocean makes and markets deep water drill rigs equipped with the patented structure, that the customer base for deep water drill rigs is small, and that GSF has not only used the Development Driller rigs equipped with the infringing structure to compete for the same customers and contracts as Transocean, but also to win contracts over competing bids from Transocean.[14]  These undisputed facts persuade the court that this factor weighs in favor of enjoining GSF from future infringement of the apparatus claims of the patents-in-suit because absent a permanent injunction the infringer, GSF, will be able to continue using the patented invention to compete against the patent holder, Transocean, for business in a developing market with a small customer base.  See Tivo, Inc. v. Echostar Communications Corp., 446 F.Supp.2d 664, 669-670 (E.D.Tex. 2006) (recognizing that an infringer who competes directly with a patent holder in a developing market is likely to cause the patent holder irreparable injury in the form of lost market share and customer base).  See

---

[14]See Transocean's Motion for Permanent Injunction, Docket Entry No. 228, pp. 8 and 10.

also z4 Technologies, 434 F.Supp.2d at (recognizing loss of
profits, brand name recognition, and/or market share caused by
infringer's continued sale of infringing products as injuries that
are often irreparable and incalculable).

> (b)   Inadequate Remedies

Asserting that "the parties may not be able to quantify the
financial effect of [GSF's] infringement in direct competition for
the same clients,"[15] Transocean argues that "[w]ithout an
injunction, [GSF] will continue to damage Transocean in ways
difficult to . . . compensate with damages."[16]   Transocean also
argues that loss of customers, market share, and the right to
exclude, including the right to control the commercial terms of any
license, are irreparable injuries that cannot be recouped through
monetary awards.

GSF contends that monetary damages are an adequate remedy for
future infringement.   GSF cites the testimony of Eric Brown,
Transocean's general counsel, acknowledging that Transocean is
willing to license its technology to GSF and others on "fair
grounds."[17]   GSF argues that Brown's testimony shows that money

---

[15]Id. at p. 11.

[16]Id. at p. 12.

[17]GSF's Response to Plaintiff Transocean's Motion for
Permanent Injunction and Cross-Motion for Stay of Any Injunction
Pending Appeal, Docket Entry No. 232, p. 20 (citing Brown
Deposition at 29:10-17).

damages will fully compensate Transocean for use of the Development Drillers to complete GSF's existing contracts with BP and BHP. Citing Justice Kennedy's concurrence in <u>eBay</u>, 126 S.Ct. at 1842, GSF also argues that Transocean will be adequately compensated by money damages because its invention does not drive the market and is only one of the Development Drillers' many features.[18]

Transocean responds that GSF uses the invention to compete with it for the same customers over a limited number of jobs that last for years, thereby harming it in ways that cannot be fully quantified and compensated with money damages.  Transocean argues that its willingness to license the patented invention does not undercut its right to an injunction,[19] and that the multiplicity of features on the Development Driller rigs weighs in favor of an injunction because the multiplicity of features precludes (or at least impedes) accurate computation of monetary damages attributable solely to the patented invention.[20]

In <u>eBay</u> Justice Kennedy instructed courts to be cognizant of the nature of the patent being enforced and the economic function of the patent holder when applying the equitable factors.  126 S.Ct. at 1842 (Kennedy, J., concurring).  Justice Kennedy

---

[18]<u>Id.</u> at p. 21.

[19]See Plaintiff Transocean's Reply in Support of Its Motion for Permanent Injunction, Docket Entry No. 236, pp. 4-6.

[20]<u>Id.</u> at p. 5.

specifically described the situation where a "patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations." Id. He concluded that in such a situation, "legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest." Id. However, contrary to Justice Kennedy's statements and GSF's argument based on them, the structures on GSF's Development Driller rigs that the court found to infringe the apparatus claims of the patents-in-suit, i.e., first and second tubular advancing stations and rail-mounted first and second tubular handling assemblies that are capable of working simultaneously on a single well, are not small components of those rigs but, instead, structures that are related to the rigs' core functionality. The court is not persuaded that Justice Kennedy's comments support the conclusion that monetary damages would be sufficient to compensate Transocean for GSF's future infringement because that infringement relates only to a "small component" of the Development Driller rigs.

Nor is the court persuaded that the mere fact that Transocean is willing to consider licensing its invention to GSF and others on "fair grounds" is sufficient to defeat Transocean's request for a permanent injunction. It is undisputed that Transocean makes and markets deep water drilling rigs equipped with the patented

invention.   Transocean asserts that it "elected to pursue a reasonable royalty in this case because it would have [been] difficult to quantify the lost profits, price erosion, loss of market share, and taking of marketing goodwill all caused by GlobalSantaFe's infringement."[21]   Transocean also asserts that

> [i]f GlobalSantaFe can continue to infringe with a court issued compulsory license, then others would be encouraged to infringe and Transocean loses part of its commercial negotiating power in license discussions.  If others are encouraged to infringe, then Transocean must spend even more in legal fees and time reaching a resolution.[22]

Although GSF disputes these assertions by Transocean, the court is persuaded that if it does not enter a permanent injunction, it will force a compulsory license on Transocean that will not contain any of the commercial business terms typically used by a patent holder to control its technology or limit encroachment on its market share.  The court concludes that this factor weighs in favor of enjoining GSF from future infringement of the apparatus claims of the patents-in-suit.  See eBay, 126 S.Ct. at 1840 (even inventors who seek only to license their products should not be categorically denied an injunction).

(c)   Balance of Hardships

Transocean argues that the balance of hardships tips in its favor because GSF's continued infringement will encourage others to infringe, interfere with Transocean's right to exclude, and cause Transocean to suffer irreparable injury including, inter alia,

---

[21]Transocean's Motion for Permanent Injunction, Docket Entry No. 228, p. 11.

[22]Id. at p. 12.

unquantifiable lost profits, lost market share, and lost goodwill.[23]

GSF argues that this factor weighs in its favor because "Transocean cannot provide rigs to replace the Development Drillers. As a result, there is no hardship to Transocean by not entering any injunction."[24] GSF argues that it "will be harmed by Transocean's proposed injunction if the Development Drillers are shutdown because it will not be permitted to practice the publicly available prior art and because it will be prohibited from receiving revenue for doing so."[25]

Transocean argues in reply that GSF has exaggerated the effects that an injunction would have on it. Citing the deposition of GSF's senior vice-president and general counsel, James L. McCulloch, Transocean argues that GSF "could avoid infringement and complete its projects with minimum disruption by permanently installing a devise that prevented the auxiliary rig from going to the seabed."[26] McCulloch testified as follows:

> Q.   Does GlobalSantaFe have contingency plans to modify their Development Drillers in the event of an injunction in this case?
>
> A.   No.  I wouldn't give it the dignity of calling it

---

[23]Id. at p. 13.

[24]GSF's Response to Transocean's Motion for Permanent Injunction and Cross-Motion for Stay of Any Injunction Pending Appeal, Docket Entry No. 232, p. 22.

[25]Id.

[26]Plaintiff Transocean's Reply in Support of its Motion for Permanent Injunction, Docket Entry No. 236, p. 6 (citing McCulloch Deposition, Exhibit B attached to Docket Entry No. 228, pp. 189-190).

contingency plans.  We don't think that there's a high likelihood that we're going to lose this case, but we have looked at what it would take to avoid infringing these patents if they are ruled valid.

    . . .

Q.    And what has been discussed to avoid infringement?

A.    Well, we've discussed about three general ideas, maybe four general ideas.  One would be building a wall between the drill centers.  That would seem to do it, but it also goes far beyond what we really need to do because that prevents us from using off-line stand building without an auxiliary well center.

I guess the second would be building some sort of platform beneath the auxiliary well center so we could advance tubulars to the seabed.  That would save off-line stand building.  We've talked about removing one of the top drives, but that doesn't really seem to be a very good answer.  The one that we've kind of settled on that is minimally disruptive but also seems to avoid infringement would be putting a casing sleeve in the second drill center.  The casing sleeve would allow the second drill center to be utilized as a[n] off-line stand building but would prevent tubulars from being advanced to the seabed.

Q.    What is a casing sleeve?

A.    Its just a hollow round tubular piece that's probably the width of the opening to the rotary table that is hung in the rotary table, and it's used in other applications.  This is not a special tool.  And you just put it in there, and it's blank at the bottom so that you could put in a tubular. You could actually rest it on the bottom of that casing sleeve.

Q.    So it has a floor?

A.    It's got a floor to it.  And so you can utilize that to — and I think it's — I don't know how long it is, 80 feet long, 50 feet long.  At any rate, it extends well below the rotary table so that you could make up stands, BHAs, other things, use it for off-line stand building; but it will prevent

the tubulars from being run to the sea floor.[27]
Transocean argues that this testimony "supports a permanent
injunction against future infringement that would prevent
irreparable harm cause[d] by Global using the invention in
competition with Transocean, but would not significantly harm
Global or the public.[28]

Since GSF's Development Driller rigs are currently under
contract for day rates of approximately, $200,000 and $500,000,
respectively, the court is persuaded that GSF will suffer
significant hardship if it is enjoined from using those rigs to
complete its existing contracts.  Since the court is also persuaded
that absent an injunction, Transocean would likely suffer
irreparable injury by future infringement, that GSF has no right to
continue infringing Transocean's patents, and that GSF's senior
vice-president and general counsel, James L. McCulloch, has
testified that the Development Driller rigs could be structurally
modified to avoid infringement with minimum disruption by placing
a casing sleeve in the second drill center that would allow that
drill center to be used for off-line stand building but would
prevent it from being used to advance tubulars to the seabed, the
court is persuaded that this factor weighs in favor of a permanent

---

[27]McCulloch Deposition, Exhibit B attached to Docket Entry
No. 228, pp. 189-191.

[28]Plaintiff Transocean's Reply in Support of its Motion for
Permanent Injunction, Docket Entry No. 236, p. 6.

-16-

injunction because the harm that continued infringement would likely cause the patent holder, Transocean, outweighs the harm that an injunction of limited scope would cause the infringer, GSF.

(d)  Public Interest

Transocean argues that "an injunction will further policy concerns underlying a patent, and will not harm the public."[29] Asserting that GSF has no other deep water rigs available, GSF argues that "any structural changes to the Development Drillers would require time, expense, and would delay first oil production from both the Atlantis and Neptune fields, thus affecting the public interest."[30]  GSF also argues that "[t]hese factors weigh heavily against an injunction."[31]

Public policy favors the enforcement of patent rights.  <u>See Abbott Labs. v. Andrx Pharmaceuticals, Inc.</u>, 452 F.3d 1331, 1348 (Fed.Cir. 2006); <u>PPG Indus., Inc. v. Guardian Indus. Corp.</u>, 75 F.3d 1558, 1567 (Fed.Cir. 1996).  The court found that the Development Driller rigs are equipped with structures that infringe apparatus

---

[29]See Transocean's Motion for Permanent Injunction, Docket Entry No. 228, p. 13.

[30]GSF's Response to Plaintiff Transocean's Motion for Permanent Injunction and Cross-Motion for Stay of Any Injuntion Pending Appeal, Docket Entry No. 232, p. 22.

[31]<u>Id.</u>

claims of the patents-in-suit,[32] and the jury found that GSF failed to prove by clear and convincing evidence either of its asserted defenses, i.e., that the patents-in-suit are invalid in light of the prior art, or that Transocean engaged in inequitable conduct to acquire the patents-in-suit.[33]  Because the court is persuaded that GSF's concerns regarding the delay in production and concomitant disservice to the public that might be caused by an injunction can be mitigated by limiting the scope of the injunction, the court concludes that this factor weighs in favor of enjoining GSF from future infringement of the apparatus claims of the patents-in-suit.

(e)  Conclusions as the Equitable Factors

For the reasons explained above, the court concludes that each of the four equitable factors weighs in favor of enjoining GSF from future infringement of the apparatus claims of the patents-in-suit.

2.  <u>Form and Scope of the Permanent Injunction</u>

Transocean asks the court to enter a permanent injunction prohibiting [GSF] "from making, using, selling, offering to sell or importing the Development Drillers I and II, or any drilling rigs not more than colorably different, in the United States for the

---

[32]See Memorandum Opinion and Order, Docket Entry No. 84, pp. 15 and 33.

[33]See Verdict Form, Docket Entry No. 208.

-18-

term of the Transocean patents."[34]   Citing <u>Intel Corp. v. U.S.
International Trade Commission</u>, 946 F.2d 821, 832, 844 (Fed. Cir.
1991), Transocean argues that [c]ase law . . . supports an
injunction against all uses of an infringing multi-activity
drilling assembly "capable of conducting simultaneous operations on
one well."   In <u>Intel</u>, the Federal Circuit affirmed an ITC order
enjoining the import of computer memory chips capable of performing
a certain function.[35]

Asserting that Transocean's proposed injunction is too broad,
GSF argues that it should only be

> enjoined from performing "simultaneous drilling
> operations and operations to the seabed auxiliary to said
> drilling operations" on a single well with both the
> "first tubular advancing station" ("first top drive
> station") and the "second tubular advancing station"
> ("second top drive station") of its Development Drillers
> I and II.[36]

Neither of the orders proposed by the parties is adequate.
Transocean's order is too broad in scope and would literally
prevent any use of the Development Driller I and II as long as they
were capable of performing simultaneous drilling operations to the
seabed on a single well.   GSF's proposed order is too narrow in
scope because it does not address the physical capability of the
Development Drillers to perform simultaneous operations to the

---

[34]See Transocean's Motion for Permanent Injunction, Docket
Entry No. 228, p. 1.

[35]<u>Id.</u> at p. 15.

[36]See [Proposed] Order, attached to GSF's Response to
Plaintiff Transocean's Motion for Permanent Injunction and Cross-
Motion for Stay of Any Injuntion Pending Appeal, Docket Entry
No. 232.

seabed on a single well but, instead, would prohibit only the actual performance of simultaneous operations to the seabed on a single well.  By proposing an injunction that applies only to performance of simultaneous drilling operations to the seabed on a single well, GSF ignores the fact that the court has found that the Development Driller I and II infringe the apparatus and not the method claims of the patents-in-suit; i.e., the court has found that the Development Driller I and II infringe the apparatus claims of Transocean's patents regardless of whether they are actually conducting operations to the seabed on a single well.

In support of its motion for permanent injunction, Transocean argues that

> [t]he prior art does not limit the scope of [the] injunction as suggested by Global.  Transocean's injunction does not prevent Global from building stands off-line or working on two wells.  Instead, the injunction prohibits stand building or operations on two wells using the specific combination of elements covered by the Transocean apparatus claims.  For example, Global could remove the claimed transfer means between the drilling stations and proceed with operations on two wells.  Global could convert one of its drilling stations into a mouse-hole that could not advance pipe to the seabed and proceed with off[-]line stand building. Unlike the prior art, the claimed invention allows for a single design to combine operations from several different prior art designs, plus perform operations never before contemplated. . . If Global wants to perform prior art operations, then it should convert the Development Drillers to a prior art design.[37]

Transocean also cites the deposition testimony of GSF's vice-

---

[37]Plaintiff Transocean's Reply in Support of Its Motion for Permanent Injunction, Docket Entry No. 236, pp. 8-9.

president and general counsel, James L. McCulloch, as evidence that GSF "could avoid infringement and complete its projects with minimum disruption by permanently installing a devise that prevented the auxiliary rig from going to the seabed."[38]  McCulloch testified that these objectives could be achieved by "putting a casing sleeve in the second drill center.  The casing sleeve would allow the second drill center to be utilized . . . [for] off-line stand building but would prevent tubulars from being advanced to the seabed."[39]   McCulloch described a casing sleeve as a round tubular piece, not a special tool, with a bottom on which other tubulars could be rested.  McCulloch stated that the casing sleeve would extend below the rotary table 50 to 80 feet and allow off-line stand building.[40]

At a November 3, 2006, hearing the court notified the parties of its intent to enter a permanent injunction requiring GSF to modify the Development Driller I and II as McCulloch suggested, i.e., by putting a casing sleeve in the second drill center that would allow the second drill center to be used for off-line stand building but would prevent the second drill center from being used to advance tubulars to the seabed.   The court also asked the

---

[38]Id. at p. 6.

[39]McCulloch Deposition, Exhibit B attached to Docket Entry No. 228, p. 190.

[40]Id.

-21-

parties to submit additional briefing concerning the court's
authority, or lack thereof, to impose this type of mandatory
injunctive relief.[41]   Although both parties have submitted
supplemental briefing on the court's authority to tailor injunctive
relief,[42] neither party has cited the court to any authority that
precludes the court from entering an injunction ordering the
structural modifications described by McCulloch to the Development
Driller I and II, i.e., to the devices that the court has found to
infringe the patents-in-suit.

GSF argues that it is well within the court's discretion to
enter an injunction ordering the installation of a casing sleeve
on the Development Drillers as a means of avoiding Transocean's
patent claims because Transocean argued at trial that its patent
did not cover a rig with one drilling station for advancing
tubulars to the sea bottom and another station for building stands
of pipe that could not advance tubulars to the sea bottom because
of a sleeve placed below the station.[43]  GSF argues that Transocean
has judicially admitted that a rig with a structure to prevent the

_____

[41]See Transcript of Hearing held on November 3, 2006, Docket
Entry No. 250.

[42]See Plaintiff Transocean's Brief Concerning Permanent
Injunction, Docket Entry No. 247, and GlobalSantaFe's Response to
Plaintiff Transocean's Brief Concerning Permanent Injunction,
Docket Entry No. 249.

[43]GSF's Response to Plaintiff Transocean's Brief Concerning
Permanent Injunction, Docket Entry No. 249, pp. 1-2 (citing
argument of Transocean's counsel, Trial Transcript, p. 1093).

second station from advancing tubulars to the seabed will not
infringe Transocean's asserted claims.  In support of this
argument, GSF cites the trial testimony of Donald Ray, one of
Transocean's inventors.  GSF asserts that Ray testified that the
prior art as represented by the Lund Patent is distinguishable from
Transocean's invention "because the second station is not 'capable
of drilling or going to the seabed,' the Lund design could not 'run
the BOP and the riser simultaneous to drilling the top hole,' an
essential feature of Transocean's invention."[44]  GSF argues that the
casing sleeve proposed by McCulloch would prevent future
infringement because it would prevent the auxiliary drilling
station from advancing tubulars to the seabed.[45]

Although Transocean cites International Rectifier, 383 F.3d at
1317-1318, and Smith International, Inc. v. Hughes Tool Co., 718
F.2d 1573, 1581 n.8 (Fed. Cir.), cert. denied, 104 S.Ct. 493
(1983), for the proposition that "the court should not issue a
permanent injunction outlining a non-infringing design without an
agreement of the parties,"[46] the court concludes that the parties
do not actually disagree on this issue.

Transocean cites the casing sleeve modification that McCulloch

─────────────

[44]Id. at p. 2 (citing Trial Transcript at 204-205).

[45]Id.

[46]See Plaintiff Transocean's Brief Concerning Permanent
Injunction, Docket Entry No. 247, p. 3.

described as only "minimally disruptive," as evidence that future infringement can be cured in a manner that allows GSF "to complete its projects with minimum disruption by permanently installing a devise that prevented the auxiliary rig from going to the seabed."[47] Moreover, Transocean's inventor, Ray, characterized the ability of the second or auxiliary drill center to go to the seabed as an essential feature of Transocean's invention.  The court concludes that when taken together the Ray testimony and the McCulloch testimony on which both parties rely show that both parties agree that structural modification effected by the addition of a casing sleeve to the second or auxiliary drill center can be used to avoid future infringement of Transocean's apparatus claims without substantially impacting GSF's ability either to fulfill the existing contracts that it has for the Development Driller I and II, or to use the Development Driller I and II to practice the prior art of off-line stand building.  Accordingly, the court is not persuaded that GSF should be enjoined from all future use of the Development Driller I and II but, instead, is persuaded that the permanent injunction should require GSF to implement the structural modifications described by McCulloch that both parties agree would prevent future infringement with minimal disruption to GSF's ability to fulfill its ongoing contracts for the Development Drillers and to practice the prior art.

---

[47]See Plaintiff Transocean's Reply in Support of Its Motion for Permanent Injunction, Docket Entry No. 236, p. 6.

## III. __GlobalSantaFe's Cross-Motion for Stay Pending Appeal__

GSF argues that the court should grant its motion for stay pending appeal because its post-trial motions show that it is likely to succeed on appeal of its inequitable conduct and invalidity defenses.[48]  Citing the arguments that it advanced in opposition to Transocean's motion for permanent injunction, GSF argues that the remaining factors favor GSF and thus support its motion for a stay.[49]

Transocean opposes GSF's "request for a stay of injunction pending appeal because [GSF] failed to offer a strong showing of likely success on appeal on its validity and inequitable conduct defenses."[50]  Transocean addresses GSF's list of appellate points by citing evidence presented at trial that supports the jury's verdict, and argues that in light of this evidence there is no reason to conclude that GSF has a likelihood of success on appeal or that a stay of injunctive relief pending appeal is warranted.[51]

---

[48]GSF's Response to Transocean's Motion for Permanent Injunction and Cross-Motion for Stay of Any Injunction Pending Appeal, Docket Entry No. 232, p. 23 (citing GSF's Motion for JMOL on Invalidity (Docket Entry No. 184), GSF's Proposed Findings of Fact and Conclusions of Law on Inequitable Conduct (Docket Entry No. 172), and GSF's Motion for Judgment on Partial Findings Under Rule 52(a) and 58 (Docket Entry No. 183)).

[49]Id. at p. 25.

[50]Plaintiff Transocean's Reply in Support of its Motion for Permanent Injunction, Docket Entry No. 236, p. 1.

[51]Id. at pp. 11-13.

**A.    Applicable Law**

Courts consider four factors in deciding whether to enter a stay:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Standard Havens Prods. v. Gencor Indus., Inc., 897 F.2d 511, 512 (Fed.Cir. 1990).  Each factor is not necessarily entitled to equal weight.  Id.  A stay is discretionary with the court.  Id.


**B.    Analysis**

  **1.   Likelihood of Success on Appeal**

For GSF "to prevail on appeal it must prove that the jury's factual findings were not supported by substantial evidence or that the facts were not sufficient to support the conclusions necessarily drawn by the jury on its way to the verdict." Tec Air Inc. v. Denso Manufacturing, Michigan, Inc., 192 F.3d 1353, 1357-1358 (Fed. Cir. 1999).  The appellate court will consider the evidence in the light most favorable to Transocean, drawing all reasonable inferences in Transocean's favor, without disturbing the jury's credibility determinations or resolutions of conflicting evidence.  GSF will prevail on appeal only if the court decides that "no reasonable person would have reached a verdict for

-26-

[Transocean] in light of the record before the jury." Id. at 1358.

When the trial began only two apparatus claims of the patents-in-suit remained at issue: claim 11 of the '781 patent, and claim 17 of the '069 patent.  The verdict form asked the jury to consider the validity of each of these two claims in light of each example of prior art and/or combinations of prior art that GSF argued made them invalid, i.e., Maritime Hydraulics' Twin Ram Rig, the GVA Twindriller, the Lund patent, and the Horn patent.  In each instance the jury concluded that the claims were valid and were not invalidated by the prior art and/or combinations of prior art.  The verdict form also asked the jury to consider whether Transocean had engaged in inequitable conduct to acquire the patents-in-suit.  The jury answered the relevant questions "No," and the court followed the jury's advisory verdict on the issue of inequitable conduct. Since the only argument that GSF has stated it will use to challenge the jury's verdict on validity and the court's verdict on inequitable conduct is insufficiency of the evidence,[52] and since GSF merely reasserts the same facts rejected by the jury concerning validity and by the court concerning inequitable conduct, the court is not persuaded that GSF has made a strong showing of success on appeal because the appellate court is required to consider the evidence in the light most favorable to the verdicts.  Id. at 1358.

---

[52]See GSF's Response to Transocean's Motion for Permanent Injunction and Cross-Motion for Stay of Any Injunction Pending Appeal, Docket Entry No. 232, pp. 23-25.

2.    <u>Irreparable Injury, Hardship, and Public Interest</u>

GSF's other arguments in support of its motion for a stay pending appeal mirror the arguments that it asserted in opposition to Transocean's motion for permanent injunction.  For the same reasons the court has already concluded that Transocean is likely to suffer irreparable harm absent a permanent injunction, that the harm Transocean would suffer if an injunction is not entered would be greater than the harm that GSF would suffer if an injunction is entered, and that the entry of an injunction will serve the public interest, the court concludes that the remaining factors weigh against granting GSF's motion for a stay of injunctive relief. <u>See Standard Havens</u>, 897 F.2d at 512.

3.    <u>Conclusion as to GSF's Motion for Stay Pending Appeal</u>

Because the court is persuaded that Transocean has satisfied its burden of showing that an injunction is necessary, while GSF has failed to raise any reasons that justify delay in the issuing that injunction, <u>see</u> <u>Boehringer</u>, 106 F.Supp.2d at 708, GSF's motion for a stay pending appeal will be denied.

## IV. <u>Conclusions and Order for Permanent Injunction</u>

For the reasons explained above, Transocean's Motion for a Permanent Injunction, Docket Entry No. 228, is **GRANTED** as modified by the parties' agreement as to the form of the language ordering

-28-

structural modification to the Development Driller I and II.[53]  For the reasons explained above, GSF's Cross-Motion for Stay of Any Injunction Pending Appeal, Docket Entry No. 232, is **DENIED**.

    **SIGNED** at Houston, Texas, on this  27th day of December, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[53]See Plaintiff Transocean's Partially Unopposed Amended Motion for Entry of Judgment, Docket Entry No. 255, pp. 5-6.